### NEW YORK CENT. R. CO. v. MUTUAL ORANGE DISTRIBUTORS.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

No. 3055.

1. COURTS ⨺326—FEDERAL COURTS—JURISDICTION.
    Under Judicial Code, § 24, par. 1 (Comp. St. 1916, § 991[1]), diversity of citizenship of the parties will not give the federal court jurisdiction, where the amount involved is less than $3,000.

2. COURTS ⨺326—FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION.
    Where a bill of lading for an interstate shipment required the owner or consignee to pay the freight, an action by a connecting carrier to recover freight due is governed by the Carmack Amendment (Act June 29, 1906 [Comp. St. 1916, §§ 8604a, 8604aa]), and under Judicial Code, § 24, par. 8 (Comp. St. 1916, § 991[8]), is within the jurisdiction of the federal District Court, regardless of the amount involved.

3. CARRIERS ⨺52(1)—CARRIAGE OF GOODS—BILL OF LADING.
    A bill of lading is an instrument of twofold character; it is at once a receipt and a contract for carriage.

4. LIMITATION OF ACTIONS ⨺24(1)—STATUTES—APPLICABILITY.
    An action by a connecting carrier for unpaid freight claimed to be due on an interstate shipment *held* based on the bill of lading, so that, where brought in the federal District Court for California, Code Civ. Proc. Cal. § 337, prescribing a period of four years, is applicable, instead of sections 338, 339.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Action by the New York Central Railroad Company against the Mutual Orange Distributors. A demurrer having been sustained, the complaint was dismissed, and plaintiff brings error. Reversed, with directions to overrule the demurrer.

The court below having sustained a demurrer to the complaint, and the plaintiff having declined to amend, judgment was entered, dismissing the action, at the plaintiff's cost—the plaintiff bringing the case here by writ of error. Among the grounds of the demurrer was one to the effect that the trial court had no jurisdiction of the action, for the reason that no federal question was involved in it, nor was there such diverse citizenship of the parties as to give the court jurisdiction; and the other was that it appeared from the complaint that the action was barred by subdivision 1 of section 338 of the Code of Civil Procedure of the state of California, and also by subdivision 1 of section 339 of the same Code.

The complaint was filed January 20, 1917, and shows that the plaintiff is a railroad corporation duly organized under the laws of the state of New York, for the carriage of freight and passengers for hire over its line of railway, extending from, among other places, the city of Buffalo to New York City, and a connecting carrier of the Atchison, Topeka & Santa Fé Railway Company, also a common carrier of freight and passengers for hire; that the defendant to the action is a corporation of the state of California, and that on or about January 23, 1913, it shipped, at Cucamonga, Cal., over the line of the Atchison, Topeka & Santa Fé Railway Company, to Kansas City, Mo., a carload of oranges, consisting of 384 boxes, under and in pursuance of a bill of lading in the usual form, one of the conditions of which is that "the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery"; that subsequently the defendant diverted the shipment to Wichita, Kan., and subsequently made various other diversions, specifically stated in the complaint, including one to the plaintiff company—the fruit being delivered to the plaintiff at Buffalo, N. Y., March 11, 1913, and by it transported within a reasonable time to Albany, in that state, from which point it was diverted by the defendant to New York City, where it was by the plaintiff placed for delivery at Duane street, and where upon inspection it was discovered that the fruit was unfit for human consumption and was thereupon condemned by the board of health of the city and ordered destroyed.

The complaint alleges that the defendant at the time of the making of the contract of shipment agreed to pay the freight charges legally due for the transportation of the fruit, and that the Atchison, Topeka & Santa Fé Railway Company agreed for itself and its connecting lines to transport the fruit as directed by the defendant. The complaint also alleges that by the terms of the contract, and under and in accordance with the tariffs and classification applicable thereto and in force and on file with the Interstate Commerce Commission at the time of the receipt of the shipment, the freight, refrigeration, car service, and other lawful charges and expenses of the transportation contracted for by the Santa Fé Company and its connecting carriers, amounted to the sum of $401.27, specifically itemized in the complaint, which total amount the complaint alleges the plaintiff was and is under the Constitution and laws of the United States "bound to collect, and which amount is justly due the plaintiff from the defendant, but defendant has refused and still refuses to pay the same, or any part thereof, although often requested so to do; that under and in accordance with the terms and provisions of an act of Congress approved February 4, 1887 [Act Feb. 4, 1887, c. 104, 24 Stat. 379], entitled 'An act to regulate commerce,' and acts amendatory thereof and supplemental thereto, there is now due, owing, and unpaid by defendant to plaintiff said sum of $401.27"—for which sum, with interest and costs of suit, the plaintiff prays judgment.

E. W. Camp, U. T. Clotfelter, Paul Burks, M. W. Reed, and Robert Brennan, all of Los Angeles, Cal., for plaintiff in error.

Ward Chapman and L. M. Chapman, both of Los Angeles, Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The only questions for our consideration are whether the complaint makes a case within the jurisdiction of the federal courts, and, if so, whether the action is barred by the provisions of the California statute that have been cited.

[1] It is obvious that the diverse citizenship of the parties did not confer jurisdiction upon the court below, because the amount involved was less than $3,000. Judicial Code (Act March 3, 1911, c. 231) § 24,

par. 1, 36 Stat. 1091 (Comp. St. 1916, § 991, subd. 1). The court was therefore without jurisdiction, unless some federal question was involved.

[2] The complaint alleges that the agreed transportation charges amounted in the aggregate to $401.27, which amount the plaintiff was and is, under the Constitution and laws of the United States, bound to collect, and which amount is justly due the plaintiff from the defendant, but to pay which the defendant refuses. The eighth subdivision of section 24 of the Judicial Code (Comp. St. 1916, § 991 [8]) confers original jurisdiction upon the District Courts "of all suits and proceedings (regardless of the amount in controversy) arising under any law regulating commerce"—the exception to that paragraph of the statute having been abrogated by the subsequent abolishment of the Commerce Court by Act Oct. 22, 1913, c. 32, 38 Stat. 219.. In so far as the question of jurisdiction is concerned, the real question therefore is whether the present suit is one arising under any law regulating commerce.

It is useless to refer to the very numerous and somewhat conflicting decisions of the subordinate federal courts upon the subject, for we think the question conclusively settled by the decisions of the Supreme Court in the cases of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and St. Louis, etc., Railway Co. v. Starbird, Administrator, 243 U. S. 592, 37 Sup. Ct. 462, 61 L. Ed. 917, that Congress by the amendment of section 20 of its act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 584, 593 [Comp. St. 1916, §§ 8604a, 8604aa]), known as the Carmack Amendment of the Interstate Commerce Act, fixed both the liabilities and obligations of the parties to interstate shipments of freight; the court saying in the latter case, among other things:

"As the shipment in this case was interstate, there can be no question that, since the decision in the Croninger Case, supra, the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation. Since the Carmack Amendment, the carrier in this case is liable only under the terms of that act of Congress, and the action against it to recover on a through bill of lading for the negligence of connecting carriers as well as of itself was founded on that amendment."

That amendment, as will be seen from its terms, requires every common carrier, receiving property at a point in one state for transportation to a point in another state, to issue a receipt or bill of lading therefor, and makes the initial carrier liable, not only for its own negligence, but also for that of any connecting carrier—the compensation to which the carriers are entitled being also required to be established in the method prescribed by the federal statute. See sections 2, 4, 7 of the act entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission" (34 Stat. 584, 586, 589, 595).

The bill of lading issued for the shipment here involved was issued under and pursuant to that statute, and whether the contract thereby evidenced was violated, and, if so, the extent of such violation, were necessarily federal questions (243 U. S. 592, and previous cases of the

same court cited on page 596 thereof, 37 Sup. Ct. 462, 61 L. Ed. 917). Among the provisions of the bill of lading is this clause of section 8 thereof:

"Sec. 8. The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. * * *"

[3, 4] The action, as has been seen, was commenced more than three years, but within four years, from the time the oranges were shipped. The first subdivision of section 338 of the California statute, relied upon in bar of the action, prescribes the period of three years for the commencement, among others, of "an action upon a liability created by statute other than a penalty or forfeiture." The other provision so relied upon is section 339 of the same Code of Procedure, which reads in part as follows:

"Within two years:

"1. An action upon a contract, obligation or liability not founded upon an instrument of writing, other than that mentioned in subdivision two of section three hundred and thirty-seven of this Code; or an action founded upon an instrument or writing executed out of the state; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guarantee of title of real property, or by a policy of title insurance: Provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guarantee of title of real property, or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder. * * *"

But section 337 of the same statute, in prescribing the periods for the commencement of actions other than for the recovery of real property, fixes the period of four years within which may be commenced:

"An action upon any contract, obligation or liability founded upon an instrument in writing executed within this state: Provided, that wherever the time within which any such action must be so commenced would in any case expire by the terms of this section after the first day of June, one thousand nine hundred and six and before the first day of January, one thousand nine hundred and seven, such action may be commenced at any time before the first day of January, one thousand nine hundred and seven, with the same force and effect as if commenced within four years as in this section provided."

The contention on the part of the defendant in error is that inasmuch as the complaint does not allege that the defendant thereto was the owner of the property, and does not allege that it was the consignee thereof, there was no express written promise by the defendant to pay the freight, and, further, that the bill of lading constituted a contract between the initial carrier and the shipper only, and contained no promise that the defendant would pay the plaintiff New York Central Railroad Company anything; that the defendant's obligation, if any, arises by implication of law, and further that the written contract covers only the shipment of the property from Cucamonga to Kansas City, and that the obligation respecting the freight from that point to its ultimate destination grew out of the reconsignments or diversions of it alleged in the complaint, thereby creating whatever obligation for the payment of freight arose by implication of law. "From any conceivable standpoint, therefore," the counsel for the defendant in error insists, "the

obligation is not founded upon a written instrument, and therefore, if it is dependent upon the obligation implied by law, is barred within two years, and if dependent upon the statute, is barred within three years."

We do not think any of these contentions or conclusions sound. "A bill of lading," said the Supreme Court in Pollard v. Vinton, 105 U. S. 7, 8 (26 L. Ed. 998) "is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. * * * It is an instrument of a twofold character. It is at once a receipt and a contract." It is immaterial whether the property for which such an instrument is issued is to be carried by rail or water. St. Louis, etc., R. Co. v. Knight, 122 U. S. 79, 7 Sup. Ct. 1132, 30 L. Ed. 1077; Friedlander v. Texas, etc., R. Co., 130 U. S. 426, 9 Sup. Ct. 570, 32 L. Ed. 991. And where such an instrument was, as here, issued by the initial carrier of an interstate shipment, it was distinctly adjudged by the Supreme Court in the recent case of Georgia, Florida & Alabama R. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948, such bill of lading governs the entire transportation and fixes not only the obligations of all participating carriers, but also the rights and obligations of all parties to the contract, none of whom can ignore or waive its terms—the construction of which contract and the determination of all rights and obligations arising thereunder being a federal question.

It results that the judgment of the court below must be and is reversed, with directions to overrule the demurrer to the complaint.