**SEA–LAND SERVICE, INC.,**
**Plaintiff-Appellee,**

v.

**MURREY & SON'S CO. INC.,**
**Defendant-Appellant.**

No. 86–5670.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1987.

Decided Aug. 10, 1987.

---

George McGill, Solana Beach, Cal., for defendant-appellant.

Thomas Russell, Long Beach, Cal., for plaintiff-appellee.

Before PREGERSON, NELSON and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

The district court granted summary judgment for Appellee Sea-Land Service, Inc. The court held that the Shipping Act of 1916, 46 U.S.C. §§ 801–42, *amended by* 46 U.S.C. §§ 1701–20 (Supp.1987), provides carriers with a private cause of action to collect freight charges imposed by a tariff. The district court also awarded attorneys'

fees to Sea-Land. Murrey and Son's timely appeals. We affirm.

## BACKGROUND

### Statutory Background

■ The Shipping Act of 1916 (the "Shipping Act"), 46 U.S.C. §§ 801–42, *amended by* 46 U.S.C. §§ 1701–1720 (Supp.1987) (the "Shipping Act of 1984") regulates the common carriage of goods by water in interstate and foreign commerce. The Shipping Act's primary purpose is to eliminate discriminatory treatment of shippers and carriers. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 622–23, 86 S.Ct. 1018, 1027–28, 16 L.Ed.2d 131 (1966); *Nepera Chem., Inc. v. Sea-Land Serv., Inc.*, 794 F.2d 688, 693 n. 34 (D.C.Cir.1986). Section 18(a) of the Shipping Act, 46 U.S.C. § 817(a), requires common carriers by water in interstate commerce to "establish, observe, and enforce just and reasonable rates, fares, charges, classifications, and tariffs," and to file tariffs showing all rates and charges with the Federal Maritime Commission. Carriers are strictly prohibited from collecting charges different from those established in their tariffs. 46 U.S.C. § 817(b)(3), *amended by* 46 U.S.C. § 1709(b) (Supp.1987).[1]

### Facts

In May 1983, Appellee Sea-Land transported for Appellant Murrey and Son's a thirty-five foot shipping container containing billiard tables from Long Beach, California to Saudi Arabia. The shipment was performed pursuant to the Sea-Land Eastbound Pacific Coast-Persian Gulf Freight Tariff F.M.C. No. 126. Under the tariff, the applicable lump sum rate for the shipment was $5,820, and the applicable insurance surcharge was $200. Sea-Land billed Murrey for $6,020. Murrey paid $3,010

---

1. The Shipping Act of 1984 repealed and amended several sections of the Shipping Act of 1916. However, the new Act contains a savings clause providing that the amendments do not apply to "claims arising out of conduct engaged in before March 20, 1984, filed within 1 year after March 20, 1984." 46 U.S.C. § 1719(e)(2). Sea-Land shipped Murrey's goods in 1983 and filed suit in

November 1984. Accordingly, the Shipping Act of 1984 does not apply to this litigation.

Even if the Shipping Act of 1984 were to apply, it would not change the outcome of this case. The tariff provisions of the Shipping Act of 1916 remain basically unchanged after the 1984 amendments.

and refused to pay the balance, alleging that Sea-Land had agreed to ship the tables for $3,010. Sea-Land brought this action to recover the amount remaining under the tariff.

In entering summary judgment for Sea-Land, the district court found that Murrey owed Sea-Land the balance of the $6,020 tariff charge and that the Shipping Act of 1916, 46 U.S.C. §§ 801–842, provides an ocean carrier a private cause of action to collect freight charges required by a tariff.

The bill of lading provided that reasonable attorneys' fees would be awarded to Sea-Land in the event it had to go to court to collect freight charges. The district court awarded attorneys' fees to Sea-Land.

On January 16, 1987, Sea-Land served its proposed Findings of Fact and Conclusions of Law upon Murrey. Central District of California Local Rule 14.6, in conjunction with Fed.R.Civ.P. 6(a) and 6(e), gave Murrey until January 27 to file objections to the proposed Findings and Conclusions. However, on January 21, the district court approved and signed the findings and conclusions. Murrey contends that it was prejudiced by this premature signing.

## DISCUSSION

### I. Private Cause of Action

■ A ruling whether Congress implicitly intended to allow a statute to be enforced by a private cause of action is a question of law reviewed de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Whether the Shipping Act of 1916 allows a carrier to assert a private cause of action against a shipper to collect charges specified in a tariff filed with the Federal Maritime Commission is a question of first impression in the Ninth Circuit. The First, Second, and Fifth Circuits have held that the Shipping Act allows carriers to enforce tariff provisions through an implicit private cause of action. *Maritime Serv. Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560, 562 (1st Cir.1976); *Prince Line,*

*Ltd. v. American Paper Exports, Inc.*, 55 F.2d 1053, 1055–56 (2d Cir.1932); *Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares*, 508 F.2d 1116, 1121 (5th Cir.1975). To the contrary, the Fourth Circuit, in *Roco Worldwide, Inc. v. Constellation Navigation*, 660 F.2d 992, 995 (4th Cir.1981), held that Congress did not intend to allow carriers to bring private actions under the Shipping Act to remedy deviations from published tariff rates.

Circuits that have found an implied private cause of action for carriers to enforce tariffs under the Shipping Act have relied on case law decided under the Interstate Commerce Act. The Shipping Act was modeled on the Interstate Commerce Act and the Supreme Court has said that Congress intended that the two Acts "have like interpretation, application, and effect." *United States Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932).

Courts have traditionally construed the Interstate Commerce Act to allow carriers to bring private suits to recover tariff charges. *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983); *Louisville & N.R.R. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). Under the Interstate Commerce Act, a carrier can sue to recover charges listed in the tariff regardless of an agreement to accept a lesser rate. *Louisville & N. R.R.*, 237 U.S. at 98, 35 S.Ct. at 495; *see also Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1372 (9th Cir.1985).

■ The tariff rate is the "only lawful rate" that can be charged, and the shipper's knowledge of that rate is conclusively presumed. *Louisville & N. R.R.*, 237 U.S. at 98, 35 S.Ct. at 495; *Farley Terminal Co., Inc. v. Atchison, T. & S.F. Ry. Co.*, 522 F.2d 1095, 1098–1099 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975). The Supreme Court has explained that although "this rule is undeniably strict, and it obviously may work hardship in some cases ... it embodies the policy which has been adopted by Congress ... to prevent unjust discrimina-

tion." *Louisville & N. R.R.*, 237 U.S. at 97, 35 S.Ct. at 495.

In *Maritime Serv. Corp. v. Sweet Brokerage De Puerto Rico Inc.*, 537 F.2d 560, 562 (1st Cir.1976), the First Circuit found that the close parallels between the tariff provisions of the Shipping Act and the Interstate Commerce Act support the implication of a private cause of action for carriers under the Shipping Act. The First Circuit in *Maritime Service* refused to make any distinction between the two Acts merely because the Interstate Commerce Act, unlike the Shipping Act, contains explicit provisions allowing carriers to recover tariff charges. *Maritime Serv.*, 537 F.2d at 563; *see* 49 U.S.C. §§ 3(2), 3(3), *amended by* 49 U.S.C. § 10744(c) (Supp.1987). The court noted that the Supreme Court had found an implied private cause of action in carriers under the Interstate Commerce Act long before Congress enacted these explicit provisions. *Maritime Serv.*, 537 F.2d at 563. Before the enactment of the explicit provisions, the only basis for construing a private cause of action under the Interstate Commerce Act was statutory language similar to that found in the present Shipping Act. *Id.*

In *Roco Worldwide, Inc. v. Constellation Navigation*, 660 F.2d 992 (4th Cir. 1981), the Fourth Circuit declined to follow the First Circuit's *Maritime Service* holding. The Fourth Circuit found that *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny do not support the implication of a private cause of action for carriers to enforce tariffs under the Shipping Act. Generally, to establish an implied private cause of action under *Cort*, a plaintiff must be "one of the class for whose *especial* benefit the statute was enacted." *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088 (quoting *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)) (emphasis supplied in *Texas & Pacific R. Co.*). In *Roco*, the Fourth Circuit refused to imply a private cause of action because it found that carriers were not special beneficiaries of the Act, but were instead the class "whose previously unregulated conduct was purposefully brought under federal control by

the statute." *Roco*, 660 F.2d at 994 (quoting *Piper v. Chris-Craft Indus. Inc.*, 430 U.S. 1, 37, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977)).

We do not find the Fourth Circuit's reasoning persuasive. *Roco's* argument that carriers are not "special beneficiaries" of the Shipping Act could be applied as easily to carriers operating under the Interstate Commerce Act. Although the provisions of the Interstate Commerce Act appear to be designed to run against carriers, courts have traditionally construed that Act to allow carriers to sue shippers to recover the charges established in the tariffs. *Thurston Motor Lines*, 460 U.S. at 533, 103 S.Ct. 1343. Moreover, carriers do benefit from the Shipping Act. The requirement that carriers place their tariffs on file with the Federal Maritime Commission prevents one carrier from luring away another carrier's customers by using surreptitious fee arrangements.

*Roco* also concluded that the analogy between the Shipping Act and the Interstate Commerce Act was inappropriate because of the practice within the shipping industry of modifying freight charges through post-shipment tariff amendments. The Shipping Act at 46 U.S.C. § 817(b)(3) provides that if a carrier makes an agreement with a shipper for a charge lower than that published in its tariff and inadvertently fails to file a new tariff before shipment, the carrier may apply to the Federal Maritime Commission for authority to refund or waive part of the freight charges collected from the shipper. 46 U.S.C. § 817(b)(3), *amended by* 46 U.S.C. § 1707(e) (Supp.1987). According to *Roco*, the carrier's ability to make these post-shipment amendments means that the Shipping Act does not require the same strict adherence to tariffs required under the Interstate Commerce Act. The court suggested that because the Interstate Commerce Act allows no deviation from published tariffs or easy amendments to accommodate special agreements, "a carrier's right of action to recover for undercharges ... is a sensible, and probably indispensable, tool of enforcement." *Roco*, 660 F.2d

at 995. The court in *Roco* went on to say that a private cause of action for carriers to enforce tariffs under the Shipping Act "would not promote unswerving fidelity to the published rates [because] established business practice ha[d] already compromised that principle." *Id.*

Although 46 U.S.C. § 817(b)(3), *amended by* 46 U.S.C. § 1707(e) (Supp.1987), does allow the Federal Maritime Commission to permit a carrier to refund a portion of freight charges collected from a shipper if the carrier inadvertently fails to amend its tariff before shipment, this provision does not create a real dissimilarity between the two Acts. The purpose of the Interstate Commerce Act is to "secure equality of rates as to all and to destroy favoritism, these last being accomplished by requiring the publication of tariffs, and by prohibiting secret departures from such tariffs." *Farley Terminal Co.*, 522 F.2d at 1098 (quoting *New Haven R. Co. v. Interstate Commerce Comm'n*, 200 U.S. 361, 391, 26 S.Ct. 272, 277, 50 L.Ed. 515 (1906)). The Shipping Act serves the same purpose. According to the D.C. Circuit, four prerequisites must be satisfied before the Federal Maritime Commission may allow a carrier to make a refund to a shipper under 46 U.S.C. § 817(b)(3):

> (1) it must be shown that the waiver and refund will not result in discrimination among shippers; (2) the corrected tariff upon which relief will be based must be filed; (3) notice of the corrected tariff must be given to all affected shippers; and (4) the application for waiver and refund must be filed with the [Federal Maritime Commission] within 180 days after shipment.

*Nepera Chem., Inc., v. Federal Maritime Com'n*, 662 F.2d 18, 21 (D.C.Cir.1981). Because these requirements insure that the amount collected is at all times equal to a filed tariff rate and that no surreptitious agreements or rebates are permitted, *Roco*'s suggestion that the Shipping Act countenances deviation from published tariffs and allows quick amendments to accommodate special agreements is not correct.

*Maritime Service*'s analogy between the Interstate Commerce Act and the Shipping Act is sound. The regulatory structure and purposes of the two Acts are substantially the same. *United States Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932). Both Acts seek to eliminate unjust price discrimination by requiring that carriers file tariffs and strictly observe their published rates. Under both Acts, carriers are prohibited from collecting charges different from those established in their tariffs. 46 U.S.C. § 817(b)(3), *amended by* 46 U.S.C. § 1709(b) (Supp.1987); 49 U.S.C. § 6(7), *amended by* 49 U.S.C. § 10761(a) (Supp. 1987). Given these close parallels, it would be inconsistent to imply a private cause of action for carriers to enforce tariffs against shippers under the Interstate Commerce Act and not under the Shipping Act.

Accordingly, the district court correctly found that an implied private cause of action under the Shipping Act allows carriers to sue shippers to collect fees owed pursuant to the published tariffs.

The district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1333 (admiralty). Jurisdiction also lies under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (regulation of commerce).

## II. Attorneys' Fees

We review the district court's award of attorneys' fees for an abuse of discretion. *See Beaudry Motors Co. v. ABKO Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986).

The district court awarded Sea-Land $2,176.35 in attorneys' fees. An award of attorneys' fees to a litigant in federal court is improper in the absence of a contract, an applicable statute, a finding that the losing party acted in bad faith, or other exceptional circumstances. *See Beaudry Motor Co.*, 780 F.2d at 756; *Richardson v. Alaska Airlines*, 750 F.2d 763, 765 (9th Cir.1984).

In the instant case, the bill of lading expressly provides that the shipper is liable

for attorneys' fees incurred in the collection of freight charges. The bill of lading constitutes a contract between Sea-Land and Murrey. *See Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196–97, 36 S.Ct. 541, 544–45, 60 L.Ed. 948 (1916); *New York Cent. R. Co. v. Mutual Orange Distribs.*, 251 F. 230, 234 (9th Cir.1918); *Restatement (First) of Contracts*, § 70 comment a, illustration 2 (1932) ("[t]he terms of a bill of lading, unless they are opposed to public policy, form part of the contract between a [carrier and a shipper]").

Murrey argues that an award of attorneys' fees would be improper because Sea-Land did not request attorneys' fees in its complaint. However, in *Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 410 (2d Cir.1962), the Second Circuit held that a shipowner's failure to request attorneys' fees in his third party complaint did not prevent recovery of attorneys' fees. The court in *Paliaga* relied on Rule 54(c) of the Federal Rules of Civil Procedure to arrive at its holding. Rule 54(c) provides in part that:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

Accordingly, the district court's award of attorneys' fees to Sea-Land was proper.

### III. The District Court's Entry of Judgment

■ The propriety of the district judge's signing the proposed Findings of Fact and Conclusions of Law is a question of law reviewed de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The district court signed Sea-Land's Proposed Findings of Fact and Conclusions of Law before Murrey filed its objections and

before the expiration of the five court days provided by the Central District of California Local Rule 14.6. Murrey contends that this premature signing constituted prejudicial error.

■ The district judge may have violated Local Rule 14.6. However, the error was harmless. Fed.R.Civ.Proc. 61 provides that:

> The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

The proposed Findings of Fact and Conclusions of Law paralleled the facts stipulated to by Murrey in the Pre-Trial Conference Order. Accordingly, Murrey was not prejudiced by the district judge's premature signing of the Findings of Fact and Conclusions of Law.

The judgment of the district court is AFFIRMED.