57 F.3d 1078
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Haro SANCHEZ-RESTREPO, aka: Harold Sanchez-Restrepo,
Defendant-Appellant.
 No. 94-50059.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 5, 1995.*
Decided June 8, 1995.
 
 Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Harold Sanchez-Restrepo ("Sanchez") appeals his conditional guilty plea conviction and sentence under the Sentencing Guidelines for possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). We have jurisdiction over this timely appeal under 28 U.S.C. Sec. 1291. We affirm his conviction and his sentence.
 
 I. BACKGROUND
 
 3
 On June 8, 1993, Los Angeles Deputy Sheriffs Julio Salcido and Denise Oglesby, along with Los Angeles Police Officers David Parham and James Gillespie, were monitoring departing passengers at the American Airlines terminal at Los Angeles International Airport ("LAX"). Deputy Salcido saw a car pull up to the terminal. The car's passenger, later identified as Sanchez, and a female driver both got out of the car. The woman opened the trunk and Sanchez removed two suitcases. The woman got back into the car and left with saying anything to Sanchez.
 
 
 4
 Salcido noticed that Sanchez was struggling under the weight of the two suitcases. He also saw that there were no identification tags on the luggage, and that there were padlocks on the suitcases that were much larger than the kind normally found on suitcases. According to Salcido, Sanchez looked around nervously while he waited in line at the sky cap counter. After Sanchez checked the suitcases with the sky cap, Salcido asked Gillespie to stay with the suitcases while he followed Sanchez. Gillespie testified that he asked the sky cap to put Sanchez's luggage aside for a few minutes (i.e., not put it on the conveyor belt going into the terminal).
 
 
 5
 Salcido, Oglesby and Parham followed Sanchez into the terminal. Sanchez was walking very quickly through the terminal. According to Salcido, the following exchange took place.
 
 
 6
 Salcido, who was not in uniform, approached Sanchez and identified himself as a police officer. Salcido asked Sanchez if he could speak with him. Salcido told Sanchez that he was not under arrest and that he was free to leave. Sanchez responded that he did not speak English. Salcido then repeated himself in Spanish. Sanchez indicated that he was willing to speak to Salcido.
 
 
 7
 Sanchez showed Salcido his plane ticket, which was a one-way ticket to John F. Kennedy Airport, purchased for cash the day before, and issued in the name of Marcial Ulloa. Sanchez then produced a New York identification card in the name of Sergio Reyes. Sanchez said that the ticket was not in his name because a friend had purchased the ticket for him because he had to leave in a hurry. Salcido asked Sanchez if he was carrying large sums of money or drugs, and Sanchez said "no." Salcido then asked whether he could search Sanchez's checked luggage, and Sanchez consented.
 
 
 8
 Sanchez's version of this exchange differed from Salcido's account. Sanchez testified as follows.
 
 
 9
 As Sanchez walked down the terminal to catch his flight, Salcido grabbed his arm and stopped him from proceeding. Salcido said to him in Spanish, "we know you have drugs in your suitcase." Salcido did not tell Sanchez that he was free to go. Salcido asked him whether he was carrying drugs and Sanchez told him "no." Salcido then replied, "well, then there's no problem if I look inside your luggage." According to Sanchez, he did not give Salcido consent to search his luggage.
 
 
 10
 Salcido then radioed Gillespie and told him that Sanchez had granted permission to search the suitcases. Gillespie sent a message back shortly thereafter that drugs were found in the luggage, and Oglesby arrested Sanchez. A total of 30 kilograms of cocaine were found in the two suitcases.
 
 
 11
 Salcido was interviewed by Drug Enforcement Administration Special Agent Timothy Sinnigen and Los Angeles Police Officer Art Medina. Medina testified that before the interview, he advised Sanchez of his Miranda rights in Spanish, and Sanchez indicated that he understood and waived those rights. Sanchez provided the officers with some information about his involvement, but the officers terminated the interview when Sanchez stated that he did not wish to tell them anything else.
 
 
 12
 Sanchez testified that when he was being interrogated, a police officer, speaking to him in Spanish, told him that if Sanchez was helpful, the policeman could help him with the judge. The police officer also told him that if Sanchez didn't tell him who the woman was who dropped him off, Sanchez would go to jail for thirty years. Sanchez testified that this police officer didn't advise him of his rights until after he had asked him many questions. Sanchez said that once he was told of his rights, he told the police officer that he wished to exercise them.
 
 
 13
 Sanchez was indicted on one count of possessing with intent to distribute 30 kilograms of cocaine, in violation of Sec. 21 U.S.C. 841(a)(1). Sanchez filed a motion for discovery requesting thirty-one categories of items and statistical information from the state and federal agencies enforcing the currency and narcotics laws at LAX for a 1 1/2 to 2-year period. See ER tab 14 at 3-11. The motion stated that the items were necessary "to enable defendant's attorney to properly prepare a motion to dismiss or motion to suppress or other relevant motion in the within matter on charges of discriminatory or improper and outrageous police conduct." Id. at 3.
 
 
 14
 In support of the discovery motion, Sanchez submitted the declaration of counsel for Sanchez, Victor Sherman ("Sherman"). In the declaration, Sherman alleged that law enforcement officers at LAX engaged "in a deliberate, systematic practice" of "incorrectly asserting that they advised a person stopped that he or she was not required to speak with them and was free to leave at any time, when in fact said advisement was not given...." ER tab 14 at 12-13.
 
 
 15
 The government filed an opposition to Sanchez's discovery motion, in which it argued that while Sanchez was in effect trying to obtain discovery on a selective prosecution claim, he had not made a colorable showing on the elements of that claim. The government argued that because there was no other basis for discovery (e.g., on the suppression issue), Sanchez was not entitled to the requested discovery. ER tab 17.
 
 
 16
 Sanchez then filed a reply to the government's opposition to his discovery motion. Sanchez attached to the reply the declaration of Michael Saterfield, sky cap supervisor at the LAX American Airlines terminal. Saterfield stated in his declaration that law enforcement officers at LAX "appear to take a special interest in items checked by blacks and Latinos. Clearly, a majority of the time it is the baggage of these ethnic groups that is searched." ER tab 21 at 14. The district court later struck Saterfield's declaration from the record because Sanchez did not make Saterfield available for cross-examination. SER at 54; Red br. at 17 n. 8.
 
 
 17
 The district court orally denied Sanchez's discovery motion. SER at 2.
 
 
 18
 Sanchez later filed a suppression motion. The district court denied the suppression motion, finding that "[t]he declaration and credible testimony" of Deputy Salcido established that "the initial encounter between Deputy Salcido and defendant was consensual and brief," and that Sanchez was not detained. ER tab 34 at 4. The court also found that Sanchez voluntarily consented to the search of his bag, and that Officer Medina issued the Miranda statements in a timely fashion. SER at 61. Finally, the court found that all the statements Sanchez made were voluntary and were not coerced. Id. at 62.
 
 II. ANALYSIS
 A. Denial of the Discovery Motion
 
 19
 "We review for abuse of discretion a district court's decision to order discovery." United States v. Armstrong, 48 F.3d 1508, 1512 (9th Cir.1995) (en banc).
 
 
 20
 In Armstrong, we adopted the "colorable basis" test for determining whether a defendant has made an adequate showing in seeking discovery on a selective prosecution charge. "The colorable basis test is met by 'some evidence tending to show the essential elements of the claim.' " Armstrong, 48 F.3d at 1512 (quoting United States v. Heidecke, 900 F.2d 1155, 1159 (7th Cir.1990)). To succeed in a claim of selective prosecution, the defendant must show both that the prosecutorial selection had a discriminatory effect, and that it was motivated by a discriminatory purpose. Id. at 1513.
 
 
 21
 In Armstrong, the defendants offered statistical evidence in support of their claim that the United States Attorney's Office had singled out black defendants in charging "crack" cocaine cases in Los Angeles. The district court in Armstrong had granted the defendants' discovery motion, and the en banc court in Armstrong then upheld the district court's order, finding that the defendants had met the "colorable basis" test.
 
 
 22
 Here, Sanchez presented no evidence of either discriminatory purpose or effect in support of his motion for discovery. Sanchez offered only the declaration of defense counsel that he was "informed" based on "information with which counsel is familiar from numerous other cases" that this was one of many cases involving a "deliberate, systematic" practice by law enforcement officer at LAX of conducting unlawful stops and searches. This is insufficient support for a selective prosecution discovery request. The district court did not abuse its discretion in denying Sanchez's discovery motion because he failed to meet the "colorable basis" test set out in Armstrong.
 
 
 23
 Sanchez contends that his discovery motion was also a request for materials relevant to his suppression motion, and not just for discovery related to a selective prosecution claim. In his motion for discovery, Sanchez stated that the items requested were necessary to prepare a motion to suppress evidence, because the suppression hearing would turn on the question of the officer's conduct as part of a pattern of conduct at LAX.
 
 
 24
 To obtain discovery under Rule 16 of the Federal Rules of Criminal Procedure, a defendant must make a prima facie showing of materiality. United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990). Here, we conclude that the district court did not abuse its discretion in denying discovery of the voluminous materials requested because Sanchez failed to explain, beyond the most cursory showing, why these materials were relevant to his suppression claim.
 
 B. Denial of the Suppression Motion
 
 25
 Sanchez claims that the district court erred in denying his suppression motion. Sanchez makes three separate arguments as to the court's error. We find each of them to be without merit.
 
 
 26
 First, Sanchez argues that he was unlawfully detained during his initial encounter with Deputy Salcido. The district court found Salcido's testimony to be credible. ER tab 34 at 4. The court found that this encounter was "consensual and brief" and that Sanchez was not detained. Id.
 
 
 27
 The factual findings made by the court at a suppression hearing are reviewed for clear error. United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989), cert. denied, 493 U.S. 1025 (1990). We will only overturn the district court's finding that the initial encounter between Sanchez and Salcido was consensual and that a reasonable person in Sanchez's position would have felt free to leave if that finding was clearly erroneous. United States v. Erwin, 803 F.2d 1505, 1508 (9th Cir.1986). Sanchez has given us no reason to question the court's findings of fact here.
 
 
 28
 Sanchez next argues that he did not consent to the search of his luggage. Alternatively, Sanchez contends that any consent he did give was a product of his illegal detention, and thus not voluntary.
 
 
 29
 The district court assessed the credibility of Sanchez and the police officers, and found that Sanchez did consent to the search. This finding of fact by the court was not clearly erroneous. Sanchez's consent also was not tainted by a prior illegality, because, as we stated above, the initial stop during which Sanchez gave his consent was not an illegal detention. The district court weighed the totality of the circumstances and properly found that "this consent to search was knowing and voluntary and was not the result of coercive or manipulative behavior on the part of Deputy Salcido." ER tab 34 at 5.
 
 
 30
 Finally, Sanchez contends that statements he made after his arrests should have been suppressed as the product of his illegal detention. Again, we agree with the district court's conclusion that Sanchez was not illegally detained, so this argument is without merit. Sanchez argues further that Sanchez was not informed of his Miranda rights until after he made his statement to the police, and so those statements should have been suppressed. But the district court credited the testimony of Officer Medina over that of Sanchez, and found that Medina did issue the warnings at the proper time. This finding of fact by the district court was not clearly erroneous.
 
 
 31
 C. The Court's Failure to Comply with Local Rule 14.6
 
 
 32
 Sanchez argues that the district court erred when it did not follow the requirements of Local Rule 14.6 of the Central District of California. "The propriety of the district judge's signing the proposed Findings of Fact and Conclusions of Law is a question of law reviewed de novo." Sea-Land Service, Inc. v. Murrey & Son's Co., Inc., 824 F.2d 740, 745 (9th Cir.1987).
 
 Local Rule 14.6 provides as follows:
 Separate Objection
 
 33
 Opposing counsel may, within five (5) court days after service of a copy of a document, prepared pursuant to Local Rules 14.1, 14.3, or 14.4, file and serve objections to the form of the document and the grounds thereof. The failure to file timely objections shall be deemed a waiver of any defects in the form of the document.
 
 
 34
 Here, the district court denied the suppression motion and directed the government to prepare a written order and proposed findings of fact and conclusions of law. The court then signed the proposed Order and Findings before five court days had elapsed.[1]
 
 
 35
 Sanchez filed a set of objections to the proposed Order, arguing that there were three portions of the proposed Order that misstated the court's findings at the suppression hearing. First, Sanchez objected to the passage which stated that the suitcases "were locked with large padlocks unlike those normally used on travel luggage." ER tab 35 at 1. Second, Sanchez argued that the court made no finding as to whether the suitcases would have made it to the aircraft on time (given that the police officers asked the sky cap to put the luggage aside), absent Sanchez's consent to the search. Id. Finally, Sanchez stated in its objections that "the court made no finding as to whether or not law enforcement officers selected [Sanchez] for questioning based upon his race." Id. at 2.
 
 
 36
 In Sea-Land Service, supra, a judge in the Central District of California signed a proposed Finding of Fact prepared by the plaintiff before the defendant filed its objections and before five court days lapsed. We found that though the district court had violated Local Rule 14.6, this error was harmless because the facts set forth in the order were similar to the facts stipulated to by the defendant at the pre-trial conference. 824 F.2d at 745.
 
 
 37
 In the present case we also find the error to be harmless. Each of the factual findings objected to by Sanchez is amply supported by the record. Sanchez was not prejudiced by the district court's failure to comply with Local Rule 14.6.
 
 
 38
 D. Adjustment for Minimal/Minor Role in the Offense
 
 
 39
 Finally, Sanchez argues that the district court clearly erred in failing to grant him an adjustment as a minimal or minor participant under U.S.S.G. Sec. 3B1.2. We review the trial court's determination that a defendant is not a minor participant for clear error. United States v. Peters, 962 F.2d 1410, 1414 (9th Cir.1992).
 
 
 40
 Sanchez received the statutory minimum sentence (120 months) for his offense. The district court had no discretion to adjust his sentence below the statutory minimum. See United States v. Kidder, 869 F.2d 1328, 1334 (9th Cir.1989). Therefore we affirm the sentence imposed by the district court.[2]
 
 III. CONCLUSION
 
 41
 The district court did not abuse its discretion in denying Sanchez's discovery motion. The court also did not err in denying Sanchez's suppression motion. Sanchez was not prejudiced by the court's failure to comply with Local Rule 14.6. Finally, the district court did not err in failing to adjust his sentence downward, because Sanchez received the statutory minimum sentence.
 
 
 42
 The conviction and sentence are AFFIRMED.
 
 
 
 *
 The panal unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government's proposed Order and Findings was mailed on Friday, October 1, 1993. Sanchez filed objections to the Order on October 6, 1993. The court signed the Order and Findings on October 4, 1993
 
 
 [2]
 Sanchez would appear to be a textbook candidate for the new "safety valve" provision enacted in the September 1994 Crime Bill. See 18 U.S.C. Sec. 3553(f) and U.S.S.G. Sec. 5C1.2 (sentencing court can avoid a statutorily-imposed mandatory minimum penalty when certain factors, descriptive of a drug "mule," are met). Unfortunately for Sanchez, who was sentenced in January 1994, this provision is not retroactive. See Publ.L. No. 103-322 Sec. 80001(c) (amendment applies only to sentences imposed "on or after the 10th day beginning after the date of enactment of this Act")