UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronnie BAZEL, Jr., Defendant–Appellant.

No. 95–5117.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1995.

Decided April 11, 1996.

David P. Folmar (argued and briefed), Office of U.S. Atty., Knoxville, TN, for U.S.

Perry H. Piper (argued and briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Ronnie Bazel, Jr.

Before JONES and BOGGS, Circuit Judges, and COFFMAN, District Judge *.

BOGGS, Circuit Judge.

Ronald Bazel, Jr. appeals from his sentencing, based on a strained statutory interpretation argument. We affirm.

I

Bazel was targeted, along with Julie Carden, Kenneth "Tight" Sanders, and Tim Benton, by a state undercover operation in McMinn County, Tennessee in late 1993 to early 1994. Bazel ran a small crack cocaine distribution operation in Tennessee. He was not particularly cautious in his dealings with undercover officers of the Tennessee Highway Patrol, as the following excerpt from his Presentence Report indicates:

* The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

On September 16, 1993, Agents Robert Burnett and Arthur Galyon were in McMinn County, attempting to buy crack from Bazel. The officers met Bazel at an apartment. Agent Galyon went inside the apartment while Agent Burnett got in Bazel's car. Bazel told the officer that the person he got the crack from had been arrested before and had told him to ask if the buyer was associated with any Federal, State, or local police agency. The agent first answered yes, that he was the Sheriff of Nottingham and that the other guy was Friar Tuck. Then the agent told Bazel that he was not an officer and hoped that Bazel was not a cop.

Thereafter Bazel proceeded to sell 6.5 grams of crack to the agents for $1,200. Over the relevant period, Bazel personally made other sales, and sent others to make the sales for him. In total, Bazel's operation sold 54.7 grams of crack to police.

Bazel was named in a twenty-count indictment, along with Carden, Sanders, and Benton, for violations of narcotics and firearms laws. Bazel pled guilty on October 17, 1994 to conspiracy to distribute crack cocaine, and possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 846. The government agreed to drop the other charges.

Section 846 [1] provides for a minimum sentence of ten years, as the defendant was guilty of conspiring to violate 21 U.S.C. § 841(b)(1)(A).[2] In 1994, however, Congress added a so-called "safety valve" to such mandatory minimum sentences in the Violent Crime Control and Law Enforcement Act of 1994, codified at 18 U.S.C. § 3553(f), allowing a judge, under some circumstances, to sentence the defendant on the basis of only what the United States Sentencing Guidelines would otherwise require. This "safety valve" statute gave the United States Sentencing Commission the authority to promulgate a Sentencing Guideline to effectuate the purposes of the statute. The Sentencing Commission has promulgated such a Guideline in the form of USSG § 5C1.2. At his sentencing hearing, Bazel argued that he was eligible for the safety valve provision. The district court rejected this argument and sentenced Bazel to 120 months in prison. The applicable Guideline range in Bazel's criminal circumstances would have been 108 to 136 months. Thus, if successful in making the "safety valve" argument on appeal, Bazel might be able to shave up to a year from his sentence.

## II

Bazel's appeal raises only one question—whether the district court erred in finding that Bazel was not eligible for a subminimum sentence under the "safety valve" provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2. Bazel contends that he is eligible because he was not engaged in a continuing criminal enterprise, even though the government did demonstrate that he was an "organizer, leader, manager, or supervisor" of a criminal operation.[3]

Because the issue here is the proper construction of the Sentencing Guidelines, and not their application, the standard of review is *de novo*. *United States v. Markwood*, 48 F.3d 969, 975 (6th Cir.1995).

The government and Bazel agree that Bazel can meet the separate requirements of 18 U.S.C. § 3553(f)(1)-(3) & (5), mirrored in USSG § 5C1.2(1)-(3) & (5). The sole question is whether Bazel meets the requirement set out in both § 3553(f)(4) and § 5C1.2(4). To put the issue in the most simple terms,

---

1. 21 U.S.C. § 846:

   Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(b)(1)(A):

   Except as otherwise provided in section 859, 860 or 861 of this title [Food and Drugs], any person who violates subsection (a) of this section [prohibiting distribution or possession with intent to distribute a controlled substance] shall be sentenced as follows: ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years....

3. Bazel also argued during his sentencing hearing that he was not in fact an "organizer, leader, manager, or supervisor," as that term is used in both § 3553(f) and § 5C1.2. He does not press this argument on appeal, however.

Bazel claims that the district court erred in refusing to permit him to be sentenced under the "safety valve" provisions of § 3553(f)[4] and § 5C1.2[5], because he was not found to be *both* an "organizer, leader, manager, or supervisor" *and* "engaged in a continuing criminal enterprise."

Recognizing that each and every "criteri[on]" must be met, which the defendant concedes, makes the defendant's argument that subsection (4) requires the government to establish that the defendant was both an "organizer, leader, manager, or supervisor" *and* was "engaged in a continuing criminal enterprise" (CCE), simple to dismiss.

Again, the relevant statutory language is: the court shall impose a sentence pursuant to the guidelines . . . without regard to any statutory minimum sentence . . . if the court finds at sentencing . . . that—

. . . .

(4) the defendant was not an organizer, leader, manager, or supervisor of others

in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

. . . .

■ Section 3553(f) and § 5C1.2 thus require the court to make a finding *both* that the defendant was not an "organizer, leader, manager, or supervisor" *and* that the defendant was not engaged in a CCE in order to open the "safety valve." Once the district court determined that Bazel was an "organizer, leader, manager, or supervisor," it could not make one of the findings necessary to opening the "safety valve." Hence, Bazel's appeal is without merit, and the district court must be affirmed.

Bazel insists, however, that the use of the conjunctive "and" in the statute and Guideline requires the government to prove both that Bazel was not an "organizer, leader, manager, or supervisor" and that he was not engaged in a CCE. Bazel argues that to

---

4. With emphasis supplied, § 3553(f) reads:

(f) **Limitation on applicability of statutory minimums in certain cases.**—Notwithstanding any other provision of law, in the case of an offense under section 401, 404, 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 961, 963), *the court shall impose a sentence pursuant to guidelines* promulgated by the United States Sentencing Commission under section 994 of title 28 *without regard to any statutory minimum sentence, if the court finds* at sentencing, after the Government has been afforded the opportunity to make a recommendation, *that*—
(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
*(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848;* and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the

offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

5. Section 5C1.2 is virtually identical to § 3553. The five subsections in each are identical. The differences appear in the initial part of the Guideline/statute. With emphasis supplied, the initial part of the Guideline reads:

In the case of an offense under 21 U.S.C. § 841, 844, 846, 960, or 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, *if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)* set forth verbatim below. . . .
Bazel does not argue that there is any significance in the differences between § 3553(f) and § 5C1.2. For instance, the following statutory sections in 21 U.S.C. are referenced in both the Guideline and § 3553: 841, 844, 846, 963. The Guideline references 21 U.S.C. § 960, however, while § 3553 references 21 U.S.C. § 961. Because Bazel pled guilty to a violation of 21 U.S.C. § 846, however, both the Guideline in § 5C1.2, and § 3553 are in all material respects similar. Bazel also attributes no legal significance to the use of the word "criteria" in the Guideline, but not in the statute.

deny the "safety valve" to him if the court finds only one of these requirements to be true is equivalent to judicially substituting the disjunctive "or" for the conjunctive "and." While the district court properly rejected this argument, and the statute is fairly clear on the point, the district court did not thoroughly explain the flaws in Bazel's argument.

The error in Bazel's argument can be explained by observing that the following two statements are equivalent:

(1) If a defendant *was not* an "organizer, leader, manager, or supervisor" *and was not* engaged in a CCE, then sentencing under the *Guidelines* is required.

(2) If a defendant *was* an "organizer, leader, manager, or supervisor," *or was* engaged in a CCE, then sentencing under the *mandatory minimum* is required.

Performing this reconceptualization by removing the negations in the statute and the Guideline does transform the conjunctive into the disjunctive, but does not change whether sentencing under the Guidelines or sentencing under the statutory mandatory minimum is required in a particular case. The form of the answer one gets on a particular set of facts differs, of course, under statement (1) or statement (2). However, the substance of the answer remains the same. Bazel is correct that judicially substituting an "or" for a statutory "and" would be illegitimate, but that is not what the district court did here. Bazel's argument would be correct if § 3553(f) or § 5C1.2 were phrased in terms of what the government would have to prove *was* true of the defendant, but unfortunately for Bazel, the statute is phrased in terms of what the defendant must show *was not* true of him.[6]

This interpretation of the statute is also in accord with the grammatical structure, the logic, and the legislative history of § 3553(f).

---

**6.** This argument can be summarized in what is known as symbolic logic:

p  represents a defendant who is an "organizer, leader, manager or supervisor"

q represents a defendant involved in a CCE

~ indicates the negative of a proposition, such as p or q

. indicates the conjunctive "and"

v indicates the disjunctive "or"

G represents sentencing under the Guidelines

M represents the mandatory minimum sentence

$\supset$ indicates that certain propositions imply others. For example, the statement "if p then q" becomes $p \supset q$

Df. means a definition

Thus, § 3553(f)(4) can be rendered in symbolic logic as:

(1) $\quad\quad\quad$ ~p . ~q $\supset$ G $\quad$ Df.

Therefore:

(2) $\quad\quad\quad$ p v q $\supset$ ~G;

so,

(3) $\quad\quad$ p v q $\supset$ ~G = ~p . ~q $\supset$ G.

As it is true that,

(4) $\quad\quad\quad$ ~G = M;

it also must be true that,

(5) $\quad\quad\quad$ p v q $\supset$ M.

And so, substituting and rearranging,

(6) $\quad\quad$ ~p . ~q $\supset$ G = p v q $\supset$ M.

The notation used is called Peano-Russell, after Bertrand Russell and Giuseppe Peano. *See* Carol Horn Greenstein, *Dictionary of Logical Terms and Symbols* 1-3 (1978); Raymond L. Wilder, *Introduction to the Foundations of Mathematics* 211-15 (1952).

· To support his argument, Bazel notes that the "and" in § 3553(f)(4) and the semicolons separating the subsections must be given different meanings, because otherwise Congress would have placed the "organizer, leader, manager, or supervisor" requirement and the engaged in a CCE requirement in different subsections separated by semicolons. This argument makes no sense. "Ands" and semicolons have equivalent meanings. Bazel concedes that he must meet the requirements of each of the subsections in § 3553(f)(1)-(5), even though each of these subsections is separated by a semicolon. Under Bazel's own logic, however, this concession makes no sense. Bazel is attributing a different meaning to the semicolons and the "and[s]" in the statute. To be consistent, Bazel cannot argue that he must meet all the requirements in each of the subsections of § 3553(f)(1)-(5), but that he does not have to meet the separate requirements of the two portions of § 3553(f)(4) separated by the word "and." For consistency's sake, Bazel would have to argue that failure by the government to prove any of the requirements in § 3553(f)(1)-(5) makes him eligible for the "safety valve."

Congress does not need a reason for grouping the CCE and "organizer, leader, manager, or supervisor" requirements in the same subsection. Nevertheless, one possible reason for grouping leadership roles and involvement in CCEs in the same subsection is that Congress and the Sentencing Commission believed that there is a certain logical connection between the extent of a criminal activity and the nature of a defendant's leadership role, if any, in a criminal organization. *Compare* 21 U.S.C. § 848(c)(2)(A) (partially defining a CCE as an activity "undertaken ... in concert with five or more persons") *with* USSG § 3B1.1 (creating a sliding scale of offense level enhancements based on whether defendant was in a leadership role or was associated with a criminal operation involving five or more persons).

■ Also, the legislative history of the statute and the Guideline is clear. Section 3553(f) was intended to provide a "safety valve" for mere drug "mules"—carriers without significant leadership roles in a drug operation. *See United States v. Sanchez-Restrepo,* 57 F.3d 1078, 1995 WL 338815 at *4 n. 2 (9th Cir.1995) (noting that § 3553(f) was intended to protect drug "mules"); Vincent L. Broderick, *Flexible Sentencing and the Violent Crime Control Act of 1994,* 7 Fed. Sentencing Rep. 128–32 (1994) (same); Paul J. Hofer, *The Possibilities for Limited Legislative Reform of Mandatory Minimum Penalties,* 6 Fed. Sentencing Rep. 63–66 (1993) (same). Bazel was running his own drug operation in this case. Bazel was not a mere "mule." Even interpreting § 3553(f) according to its underlying purpose, he should not be eligible for the "safety valve." *Cf.* William N. Eskridge & Philip P. Frickey, *Statutory Interpretation as Practical Reasoning,* 42 Stan. L.Rev. 321, 333 (1990) (calling such a "purposive" approach the traditional method of statutory interpretation).

■ Furthermore, Application Note 6 of § 5C1.2 states:

"Engaged in a continuing criminal enterprise," as used in subdivision (4), is defined in 21 U.S.C. § 848(c). As a practical matter, it should not be necessary to apply this prong of subdivision (4) because (i) this section does not apply to a conviction under 21 U.S.C. § 848, and (ii) any defendant who "engaged in a continuing criminal enterprise," but is convicted of an offense to which this section applies will be a "leader, organizer, manager, or supervisor of others in the offense."

Bazel's argument is irrational for the second reason given in this Application Note. 21 U.S.C. § 848(c)(2)(A) partly defines a person engaged in a CCE as a person who is also an "organizer ... supervisor[ ] or any other [kind] of manage[r]." So Bazel's argument that § 3553(f)(4) and § 5C1.2(4) impose two different requirements fails because such a reading of the statute would render the "organizer, leader, manager, or supervisor" requirement superfluous, as the definition of a person engaged in a CCE already encom-

The notation used is called Peano–Russell, after Bertrand Russell and Giuseppe Peano. *See* Carol Horn Greenstein, *Dictionary of Logical Terms and Symbols* 1–3 (1978); Raymond L. Wilder, *Introduction to the Foundations of Mathematics* 211–15 (1952).

passes such a leadership requirement. "The cardinal principle of statutory construction is to save and not destroy." *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 620–21, 81 L.Ed. 893 (1937)).

For the foregoing reasons, the district court's construction of the Sentencing Guidelines was correct, and the sentence imposed in this case is therefore **AFFIRMED.**