RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

 *v.*

SARDAR ASHRAFKHAN, aka Dr. Khan,

    *Defendant-Appellant*.

No. 24-1452

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20551-12—Laurie J. Michelson, District Judge.

Decided and Filed: March 3, 2025

Before: COLE, WHITE, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** Benton C. Martin, FEDERAL COMMUNITY DEFENDER OFFICE, Detroit, Michigan, for Appellant. Wayne F. Pratt, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────

## OPINION

─────────────

COLE, Circuit Judge. A district court sentenced Sardar Ashrafkhan for conspiring to distribute and possess with intent to distribute a controlled substance, conspiring to commit health care fraud, and money laundering. After a retroactive amendment to the United States Sentencing Guidelines, Ashrafkhan moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). To be eligible for the reduction, a defendant must meet ten criteria, including showing that "the defendant did not receive an [aggravating role adjustment] and was not

engaged in a continuing criminal enterprise[].” USSG Amend. 821, Pt. B; § 4C1.1(a)(10).  Since Ashrafkhan received an aggravating role adjustment, the district court determined he was ineligible and denied his motion.  Ashrafkhan appeals, arguing he meets the criteria despite the aggravating role adjustment because he did not engage in a continuing criminal enterprise.  We affirm.

## I.

Sardar Ashrafkhan owned and operated a sham medical practice where doctors wrote and billed Medicare for fraudulent prescriptions.  Associates would visit specific pharmacies to fill the false prescriptions, and those pharmacies would pay Ashrafkhan kickbacks.  The scheme resulted in the collection of millions of dollars from fake Medicare claims and the sale of hundreds of thousands of opioid-based drugs on the illegal street market.

Ashrafkhan was indicted in 2013 with dozens of coconspirators  and tried in 2015 alongside two doctors he employed.  At trial, the government presented evidence that Ashrafkhan masterminded the scheme.  The jury convicted Ashrafkhan of drug conspiracy, health care fraud conspiracy, and money laundering.

At sentencing, Ashrafkhan’s total offense level was 43.  He received an adjustment for being an “organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive” under USSG § 3B1.1(a).  Ashrafkhan had no criminal history points, so his criminal history category was I.  Since those calculations would result in a guidelines range exceeding the total maximum term of imprisonment that could be imposed under the statute, Ashrafkhan’s applicable guidelines range was set at the statutory maximum of 600 months.  Varying downwards, the district court sentenced him to 276 months of imprisonment.  We affirmed. *See United States v. Ashrafkhan*, 964 F.3d 574, 577, 580 (6th Cir. 2020); *United States v. Askrafkhan*, 821 F. App’x 428, 431 (6th Cir. 2020).

After Ashrafkhan’s sentencing, the United States Sentencing Commission promulgated a new guideline, USSG § 4C1.1, to provide a two-point reduction in the offense level for defendants who received no criminal history points at sentencing, otherwise referred to as “zero-point offenders.”  Notice of Final Action Regarding Amendment 821, 88 Fed. Reg. 60534,

60534–36 (Sept. 1, 2023).  To be eligible for the reduction, the defendant must meet ten criteria set forth in § 4C1.1(a).[1]  USSG Amend. 821, Pt. B.  This appeal concerns only the tenth criterion: "[T]he defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848."  USSG § 4C1.1(a)(10).[2]  Made retroactively applicable, § 4C1.1 can serve as the basis for a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).  USSG Amend. 825; USSG § 1B1.10.

Arguing that he qualified for a two-level reduction based on the amendment, Ashrafkhan moved for a sentence reduction under 18 U.S.C. § 3582(c)(2).  The government did not respond to his motion, though the probation office advised that Ashrafkhan would be ineligible for the reduction based on his aggravating role adjustment.

---

[1]The text of the amendment states—

(a) *Adjustment*.—If the defendant meets all of the following criteria:

    (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

    (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

    (3) the defendant did not use violence or credible threats of violence in connection with the offense;

    (4) the offense did not result in death or serious bodily injury;

    (5) the instant offense of conviction is not a sex offense;

    (6) the defendant did not personally cause substantial financial hardship;

    (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

    (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

    (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

    (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

[2]Section 4C1.1(a) was further amended effective November 1, 2024, to strike 4C1.1(a)(10) and replace it with new paragraphs (10) and (11): "(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and (11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." USSG Amend. 831.  The Commission explained that the amendment "makes technical changes" to "clarify the Commission's intention that a defendant is ineligible for the adjustment if the defendant meets either of the disqualifying conditions in the provision." *Id.*  As the district court issued its order before the enactment of this amendment, we rely on solely the statutory text from Amendment 821.

The district court denied the motion.  It reasoned that, although Ashrafkhan had zero criminal history points, his aggravating role adjustment rendered him ineligible for the reduction. Ashrafkhan appealed.

## II.

"A § 3582(c)(2) proceeding involves a two-step process for determining whether to reduce a defendant's sentence based on a retroactive guidelines amendment."  *United States v. Hanson*, 124 F.4th 1013, 1016 (6th Cir. 2025).  First, the district court determines the defendant's eligibility for a sentence reduction.  *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *Dillon v. United States*, 560 U.S. 817, 825–26 (2010)).  If the district court determines that the defendant is eligible,  it next considers whether the authorization is warranted according to the factors provided in 18 U.S.C. § 3553(a).  *Id.* at 949.

This appeal concerns only the first inquiry: whether Ashrafkhan was eligible for a sentence reduction.  We review the district court's determination of a defendant's eligibility for a sentence reduction de novo.  *United States v. Webb*, 760 F.3d 513, 517 (6th Cir. 2014) (quoting *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011)).  And we use accepted rules of statutory interpretation to understand the Sentencing Guidelines.  *United States v. Tate*, 999 F.3d 374, 378 (6th Cir. 2020).

## III.

To receive the zero-point offender reduction under § 4C1.1, a defendant must "meet[] all of [that provision's] criteria," including that "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848."  USSG § 4C1.1(a)(10).

Under Ashrafkhan's reading, the word "and" joins two elements into a single disqualifying condition.  Accordingly, he argues that a defendant fails to meet the criterion only if he *both* received an aggravating role enhancement *and* was engaged in a continuing criminal enterprise.

Under the government's reading, the word "and" connects two distinct conditions, both of which must be satisfied to meet the criterion.  Accordingly, the defendant meets the criterion only if he did not receive an aggravating role adjustment *and* was not engaged in a continuing criminal enterprise.

The text and context of § 4C1.1(a)(10), as well as our past interpretation of near-identical statutory language, yield the government's reading as the only correct construction.[3]  *See, e.g.*, *United v. Bazel*, 80 F.3d 1140, 1142 (6th Cir. 1996); *see also Pulsifer v. United States*, 601 U.S. 124, 141 (2024).  Several of our sister circuits agree.  *See United States v. Cervantes*, 109 F.4th 944, 946 (7th Cir. 2024) (per curiam) ("[T]he role adjustment that [the defendant] received under § 3B1.1 is sufficient to disqualify him from eligibility for a two-level reduction under § 4C1.1."); *United States v. Morales*, 122 F.4th 590, 595 (5th Cir. 2024) ("[T]o receive the zero-point-offender reduction, a defendant must show *both* that he did not receive a § 3B1.1 adjustment *and* that he was not engaged in a continuing criminal enterprise. The failure to meet either one of those requirements precludes relief."); *United States v. Milchin*, 128 F.4th 199, 201 (3d Cir. 2025); *United States v. Shaw*, No. 24-6638, 2024 WL 4824237, at *1 (4th Cir. Nov. 19, 2024) (per curiam) (unpublished).

Consequently, § 4C1.1(a)(10) creates an eligibility checklist and specifies two necessary conditions for eligibility under the amendment: a defendant must have not received an aggravating role adjustment *and* a defendant must not have engaged in a continuing criminal enterprise to meet the criterion.  Failure to satisfy either condition renders the defendant ineligible.

## A.

"When interpreting a [guideline], we begin with the plain meaning of the [provision's] language." *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (citation omitted).  To do so, we

---

[3]In an unpublished opinion, we observed that "[b]oth interpretations are plausible" when undertaking a review for plain error. *United States v. Pearce*, No. 23-6079, 2024 WL 3458085, at *9 (6th Cir. July 18, 2024). We concluded that the absence of precedent and the grammatical plausibility of both interpretations sufficed to show that the district court did not plainly err when it determined that an aggravating role adjustment disqualified a defendant from receiving the zero-point offender reduction. *Id.* at *8-9.

examine the text, as well as the "language and design of the [guideline] as a whole." *United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020) (internal citation and quotation marks omitted). If the language is unclear, we may turn to the guideline's legislative history. *Id.* (quoting *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008)). And "[i]f the [guideline] remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants." *Id.* (first alteration in original) (internal citation and quotation marks omitted).

We begin with the text. *See United States v. Jackson*, 995 F.3d 522, 524 (6th Cir. 2021). Section 4C1.1(a) lists the criteria that a defendant must meet to be eligible for the zero-point offender reduction. It phrases each criterion in the negative, identifying conditions that a defendant must show were *not* true to be eligible. The tenth criterion requires a defendant to show that he "did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." § 4C1.1(a)(10). In other words, to remain eligible for the reduction, a defendant must show that (1) he has not received an aggravating role adjustment, *and* (2) he has not engaged in a continuing criminal enterprise. If a defendant received an aggravating-role adjustment, a defendant cannot show that he "did not receive an adjustment under § 3B1.1 (Aggravating Role)." *Id.* Accordingly, the adjustment alone would render him ineligible by the plain terms of the provision, regardless of his involvement in a continuing criminal enterprise. *See Morales*, 122 F.4th at 596.

Ashrafkhan argues that the Commission "could have listed the two exclusions separately, as it did for exclusions (2) through (8) in § 4C1.1." (Appellant Br. 10.) He contends that Amendment 831, which indeed divides subsection (10) into two distinct paragraphs to clarify that a defendant is ineligible for the adjustment if the defendant meets either of the disqualifying conditions in the provision, supports his position that § 4C1.1(a)(10) is ambiguous.

We disagree. For the reasons provided in this opinion, the meaning of the provision is plain, and the Sentencing Commission's effort to promulgate a "technical change" to provide greater clarity due to continuing litigation over its meaning does not itself render the provision ambiguous. USSG Amend. 831.

Alternatively, Ashrafkhan argues that "[h]ad the Sentencing Commission meant to exclude people with either an aggravating role enhancement *or* engaged in a [continuing criminal enterprise], it would have written 'or.'" (Appellant Br. 10.) But "conjunctions are versatile words, which can work differently depending on context." *Pulsifer*, 601 U.S. at 151. And this argument cuts *against* Ashrafkhan. If the Sentencing Commission had replaced "and" with "or," then Section 4C1.1(a)(10) would carry the meaning that Ashrafkhan prefers: It would state that a defendant remains eligible for the reduction if he "did not receive an [Aggravating Role] adjustment . . . *or* was not engaged in a continuing criminal enterprise." That the Sentencing Commission instead used "and" shows that it sought to require a defendant to show the absence of *both* conditions—rather than the absence of only one.

The Supreme Court's recent examination of the criminal history requirement of the "safety valve" provision, 18 U.S.C. § 3553(f)(1), which similarly lists three criteria a defendant must show he "does not have" to be eligible, is instructive. *Pulsifer*, 601 U.S. at 129. That statutory sentencing reduction applies when "the defendant does not have—(A) more than 4 criminal history points, . . . (B) a prior 3-point offense, . . . and (C) a prior 2-point violent offense[.]" 18 U.S.C. § 3553(f)(1). The grammatical structure of that provision created an interpretive challenge: "[T]he phrase 'does not have A, B, and C'" is susceptible to multiple plausible readings. *Pulsifer*, 601 U.S. at 127. On one hand, as the defendant argued, the provision could be read to "set[] out a single, amalgamated condition for relief," such that "a defendant meets the requirement [] so long as he does not have the *combination* of A, B, and C." *Id.* at 127. On the other hand, as the government argued, "does not have" could be read to "operate[] on" each of the three requirements independently—i.e., the statute could be read to "require[] that the defendant does not have A, and also does not have B, and finally does not have C." *Id.* at 134.

The Court explained that the government's reading would have been the correct one if Congress had "repeat[ed]" the negative phrase "does not have" before each requirement in the statutory list. *Id.* at 137. In other words, if the statute had stated explicitly that "the defendant must not have 'more than 4 criminal history points' *and* must not have a '3-point offense' *and* must not have a '2-point violent offense,'" then it would have more clearly "require[d] the

defendant not to have . . . each of the three." *Id.* at 139–40.  But Congress was not so explicit, so the Court went beyond the statute's text and adopted the government's reading based on statutory "context" and "function." *Id.* at 141–49.

Ashrafkhan makes effectively the same argument as the defendant in *Pulsifer*. Ashrafkhan argues that he remains eligible for the zero-point offender reduction if "he does not have the *combination*" of an aggravating role adjustment and a continuing criminal enterprise conviction. *Id.* at 127. (Appellant Br. 6.)  Since he has only one of the two, Ashrafkhan asserts that he remains eligible.  But that argument fails because § 4C1.1(a)(10) makes explicit what the statute in *Pulsifer* left implicit.  Rather than placing one negative phrase at the beginning of a list of requirements, the guideline includes a negative phrase at the beginning of each requirement in the list.  The guideline states that a defendant is eligible for the reduction if he "*did not* receive an [Aggravating Role] adjustment . . . and *was not* engaged in a continuing criminal enterprise." USSG § 4C1.1(a)(10) (emphasis added).  Thus, the guideline expressly "requires the defendant not to have . . . each" of the two conditions.  *See Pulsifer*, 601 U.S. at 140.

Therefore, § 4C1.1(a)(10) avoids the grammatical structure that created interpretive challenges in *Pulsifer*.  Each negative phrase constitutes a "separate requirement." *Morales*, 122 F.4th at 594 (quoting *Cervantes*, 109 F.4th at 946).  Simplified, the guideline states a defendant is eligible for a reduction if he "does not have X *and* did not do Y"—so if a defendant *does* have X, or *did* do Y, he is ineligible.  *Id.*  Since Ashrafkhan has an aggravating role adjustment, that alone makes him ineligible for the reduction by the plain terms of the sentencing guideline.

### B.

Inquiry into guideline's context likewise clarifies § 4C1.1(a)(10).  Reading the provision to set out a single condition—that the defendant does not have the *combination* of an aggravating role enhancement *and* engagement in a continuing criminal enterprise—creates two statutory difficulties resolved by construing the provision as an eligibility checklist.

First, Ashrafkhan's reading would render § 4C1.1(a)(10) largely superfluous.  Various provisions of the Sentencing Guidelines operate to, generally, exclude a defendant from receiving an aggravating role adjustment if they engaged in a continuing criminal enterprise.

The application notes of the guideline provision, § 2D1.5, of the continuing criminal enterprise statute, 21 U.S.C § 848(C), instruct sentencing courts to "not apply any adjustment from Chapter Three, Part B (Role in the Offense)."  The background commentary explains that such an adjustment, which includes an aggravating role adjustment, "is not authorized [b]ecause a conviction under 21 U.S.C. § 848 establishes that a defendant controlled and exercised authorized over one of the most serious types of ongoing criminal activity" and so "already reflects an adjustment for role in the offense."  USSG § 2D1.5.  In other words, the sentencing guidelines instruct courts to avoid applying the aggravating role adjustment to a defendant convicted of engaging in a continuing criminal enterprise.  *Id.*  So, under Ashrafkhan's reading, § 4C1.1(a)(10) applies only to a group of defendants that may not exist—those that "have *both* an aggravating role [adjustment] and a [continuing criminal enterprise] conviction."  (Appellant Br. 14.)  We decline to render § 4C1.1(a)(10) a "nullity."  *Milchin*, 128 F.4th at 202.

Ashrafkhan argues that a hypothetical defendant could still meet § 4C1.1(a)(10) under his reading "if a person is convicted of multiple counts of convictions—a [continuing criminal enterprise] offense and other offenses" such that the "person may receive aggravating role enhancements on the additional offenses other than the [continuing criminal enterprise] conviction."  (Reply Br. 4–5.)  To begin, it is not clear that Ashrafkhan is correct.  The guidelines commentary states that an aggravating role adjustment "is not authorized" for a defendant with "a conviction under 21 U.S.C. § 848."  USSG § 2D1.5.  For that reason, the Third Circuit has stated that "a defendant found to have engaged in a continuing criminal enterprise will *never* receive an [aggravating role] adjustment."  *Milchin*, 128 F.4th at 202.  Ashrafkhan provides no authority to suggest that an additional conviction alters that categorical bar.  But even if such a rare defendant exists, Ashrafkhan's reading would constrain the application of § 4C1.1(a)(10) so narrowly as to effectively render the criterion inapplicable.  And we avoid construing guidelines in a manner that would render their words superfluous.  *United States v. Wilkes*, 78 F.4th 272, 280 (6th Cir. 2023) (citation omitted); *see also United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("The cardinal principle of statutory construction is to save and not to destroy." (internal citation and quotation marks omitted)).

Second, Ashrafkhan's reading would constrain the applicability of § 4C1.1(a)(10) to defendants convicted of specific drug offenses. This is because the continuing criminal enterprise statute, 21 U.S.C. § 848, is "directly aimed at the organizers and leaders of narcotics operations," *United States v. Sinito*, 723 F.2d 1250, 1261 (6th Cir. 1983) (citation omitted). The aggravating role adjustment under § 3B1.1, which applies to criminal activities beyond narcotics, has no such constraint. *See, e.g.*, *United States v. Christian*, 804 F.3d 819, 821 (6th Cir. 2015) (considering an aggravating role adjustment for involvement in a truck theft ring).

Aggravating role adjustments and continuing criminal enterprise offenses thus target similar conduct—leadership or managerial roles in multi-participant criminal organizations—but in different contexts. *See Bazel*, 80 F.3d at 1144 ("[O]ne possible reason for grouping leadership roles and involvement in [continuing criminal enterprises] in the same subsection is that Congress and the Sentencing Commission believed that there is a certain logical connection between the extent of a criminal activity and the nature of a defendant's leadership role, if any, in a criminal organization."). Requiring that a defendant exhibit a combination of both to be rendered ineligible under § 4C1.1(a)(10) distorts the provision's logic.

IV.

Reading § 4C1.1(a)(10) as an eligibility checklist also comports with our interpretation in *Bazel* of a near-identical provision in the safety-valve statute. *Id.* at 1140–41; *see also United States v. Draheim*, 958 F.3d 651, 657–58 (7th Cir. 2020) (adopting *Bazel*'s analysis and approach). That provision provides that, for certain drug offenses, the sentencing court "shall impose a sentence [] without regard to any statutory minimum sentence, if the court finds at sentencing [] that [] the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise []." 18 U.S.C. § 3553(f)(4); *see also* USSG § 5C1.2(4). Like Ashrafkhan, the defendant in *Bazel* contended he was eligible under the provision, despite having been an "organizer, leader, manager, or supervisor" of a criminal operation, because he was not engaged in a continuing criminal enterprise. *Bazel*, 80 F.3d at 1141.

We observed in *Bazel* that the defendant's argument may have prevailed if the provision "were phrased in terms of what the government would have to prove *was* true of the defendant." *Id.* at 1143. Instead, as here, "the statute is phrased in terms of what the defendant must show *was not* true of him." *Id.* Consequently, we explained that "[r]ecognizing that each and every 'criterion' must be met [] makes the defendant's argument that [§ 3553(f)(4)] requires the government to establish that the defendant was both an 'organizer, leader, manager, or supervisor' *and* was 'engaged in a continuing criminal enterprise' [], simple to dismiss." *Id.* at 1142.

We also noted that interpreting the subsection as setting forth two separate conditions the defendant had to meet accorded "with the grammatical structure, the logic, and the legislative history of § 3553(f)." *Id.* at 1143. That reasoning included the observation that requiring that a defendant be *both* an "organizer, leader, manager, or supervisor" *and* be engaged in a continuing criminal enterprise "would render the 'organizer, leader, manager, or supervisor' requirement superfluous, as the definition of a person engaged in a [continuing criminal enterprise] already encompasses such a leadership requirement." *Id.* at 1144–45.

Ashrafkhan tries to distinguish *Bazel* by arguing that it addresses the safety-valve provision and not the specific guideline provision here. Ashrafkhan also notes that both provisions had distinct legislative histories and goals. This is true. But *Bazel*'s reasoning mainly rested on the natural reading of the text itself—it did not find the text so ambiguous as to require relying on legislative history and purpose to discern its meaning. *Id.* at 1142. Consequently, *Bazel*'s textual analysis remains persuasive here, and the differences between the provisions are not so significant as to demand that we interpret nearly identical text differently.

V.

Finally, we reject Ashrafkhan's efforts to invoke the rule of lenity. "The rule of lenity [] applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994). For the reasons explained above, although there are two grammatically plausible readings of § 4C1.1(a)(10),

in context its text is susceptible to only one possible construction.  That "leav[es] no role for lenity to play." *Pulsifer*, 601 U.S. at 153.

VI.

For the foregoing reasons, we affirm.