RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

*v.*

Nos. 24-5587/6107

DANIEL MATTHEWS (24-5587); MARKEL LEVAIL
LIVINGSTON (24-6106),

*Defendants-Appellants.*

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:23-cr-00043—Claria Horn Boom, District Judge.

Decided and Filed:  October 17, 2025

Before:  NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Perry H. Piper, THE PIPER LAW FIRM, Chattanooga, Tennessee, for Appellant
Matthews.  Chistopher Bazeley, BAZELEY LAW, Cincinnati, Ohio, for Appellant Livingston.
Charles P. Wisdom Jr., Carlton S. Shier, IV, UNITED STATES ATTORNEY'S OFFICE,
Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

MATHIS, Circuit Judge.  Daniel Matthews and Markel Livingston participated in a drug-
trafficking enterprise that distributed fentanyl and methamphetamine.  Matthews pleaded guilty
to drug and firearm offenses.  Livingston pleaded guilty to a drug offense.  The district court
sentenced Matthews to 228 months in prison and Livingston to 74 months in prison.

Matthews and Livingston now challenge the reasonableness of their respective sentences. Both argue that the district court erred in applying a sentencing enhancement under U.S.S.G. § 2D1.1(b)(13).  Livingston argues separately that his attorney represented him ineffectively at sentencing, that the district court erroneously denied his request for a downward departure, and that the district court improperly imposed a special condition of supervised release.  Discerning no error, we affirm.

**I.**

Matthews and Livingston were part of a group that trafficked fentanyl and methamphetamine throughout the Lexington, Kentucky area.  Matthews supplied the drugs to dealers like Livingston, who in turn sold the drugs to others.  Matthews and Livingston distributed thousands of fentanyl pills.  The fentanyl pills involved in the group's distribution were pressed to look like oxycodone pills—they had similar size, shape, and color.

Kentucky State Police officers apprehended one of the defendants' co-traffickers and then began using confidential informants as part of their investigation into Matthews and Livingston.  On August 1, 2023, officers arrested Livingston after he traveled to a meeting location for a controlled buy.  He told the officers that he had been obtaining drugs from Matthews.  That same day, officers arrested Matthews.

A federal grand jury indicted Matthews, Livingston, and others for numerous drug and firearm offenses.  Matthews ultimately pleaded guilty to possession with the intent to distribute fentanyl and methamphetamine and possession of a firearm in furtherance of a drug-trafficking offense.  Livingston pleaded guilty to one count of conspiracy to distribute fentanyl and methamphetamine.  The defendants then proceeded to sentencing.

At Matthews's sentencing hearing, the district court determined that Matthews's advisory Sentencing Guidelines range was 270 to 322 months.  This included a range of 210 to 262 months for the drug offense and an additional consecutive 60 months for the firearms offense. The court sentenced Matthews to 228 months' imprisonment.

At Livingston's sentencing hearing, the district court calculated Livingston's Guidelines range as 70 to 87 months.  Livingston sought a sentence of 60 months' imprisonment, mostly due to his reduced mental capacity and mental-health issues.  But the district court imposed a within-Guidelines sentence of 74 months' imprisonment and 4 years of supervised release.  Among other terms of supervised release, the district court imposed a special condition requiring Livingston to submit his electronic devices to a search conducted by a United States probation officer.

## II.

Matthews and Livingston contest the procedural reasonableness of their respective sentences.  For a sentence to be procedurally reasonable, the district court must properly calculate a defendant's Guidelines range, treat the Guidelines as advisory, consider the factors under 18 U.S.C. § 3553(a), rely on facts that are not clearly erroneous when determining the sentence, and adequately explain the sentence.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

We generally review the procedural reasonableness of a defendant's sentence under the abuse-of-discretion standard.  *Id.*  In doing so, we review the district court's "legal interpretation of the Guidelines de novo" and its findings of fact for clear error.  *United States v. Jones*, 81 F.4th 591, 597 (6th Cir. 2023) (quotation omitted).  A district court's factual findings are clearly erroneous when, based on all the evidence, we are left with a "definite and firm conviction that the district court made a mistake."  *United States v. Histed*, 93 F.4th 948, 954 (6th Cir. 2024) (citation modified).

We review unpreserved challenges to the procedural reasonableness of a sentence for plain error.  *See Holguin-Hernandez v. United States*, 589 U.S. 169, 170–71 (2020).  Under plain-error review, a defendant must show that: (1) there was an error, (2) the error was "plain," (3) the error affected "substantial rights," and (4) "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings."  *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation modified).

**III.**

We begin with Matthews's and Livingston's arguments that the district court erred in applying U.S.S.G. § 2D1.1(b)(13). That provision enhances a defendant's base offense level by four levels if he "knowingly misrepresented or knowingly marketed" fentanyl as another substance. U.S.S.G. § 2D1.1(b)(13)(A). But what does it mean to "knowingly misrepresent" or "knowingly market"?

We use the traditional statutory-interpretation tools when construing the Guidelines. *United States v. Ashrafkhan*, 129 F.4th 980, 983 (6th Cir. 2025). This means that we start with the plain meaning of the text. *Id.* at 984. In examining the text, we consider "the language and design of the guideline as a whole." *Id.* (citation modified). "When the Guidelines do not define a term, we generally give the term its ordinary meaning." *United States v. Nicolescu*, 17 F.4th 706, 727 (6th Cir. 2021) (citation modified). But we resort to other interpretive tools "only if the text alone does not admit a single conclusive answer." *Jones*, 81 F.4th at 598 (citation modified). Dictionaries are one of the tools that "lie within our toolbox" for determining a term's ordinary meaning. *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020).

The Guidelines do not define "knowingly," "misrepresent," or "market." So we must determine the ordinary meaning of those terms.

To define "knowingly" as the Guidelines use that term, we have looked to the Model Penal Code. *United States v. Georgia*, 279 F.3d 384, 390 (6th Cir. 2002). The Model Penal Code says that "[a] person acts knowingly with respect to a material element of an offense when[,] if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist." Model Penal Code § 2.02(2)(b)(i)); *see also Knowing*, Black's Law Dictionary (10th ed. 2014) ("Having or showing awareness or understanding; well-informed."); *Knowledge*, Black's Law Dictionary (10th ed. 2014) ("An awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact.").

"Misrepresent" ordinarily means "to represent wrongly or imperfectly; to give a false or misleading representation of." Oxford English Dictionary, www.oed.com (citation modified)

(last visited Sept. 8, 2025). A person "misrepresents" when he makes "an assertion that is not in accord with the facts." Restatement (Second) of Contracts § 159 (1981); *see also Misrepresentation*, Black's Law Dictionary (10th ed. 2014) ("The act or an instance of making a false or misleading assertion about something."). "A misrepresentation . . . commonly takes the form of spoken or written words." Restatement (Second) of Contracts § 159 cmt. a.

"Marketing," according to the Supreme Court, "ordinarily refers to the act of holding forth property for sale, together with the activities preparatory thereto." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). Dictionary definitions align with the Supreme Court's interpretation. *See Market*, Oxford English Dictionary, www.oed.com ("To sell in a market" or "to buy and sell") (last visited Sept. 8, 2025); *Market*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) (similar); *Marketing*, Black's Law Dictionary (10th ed. 2014) ("The act or process of promoting and selling, leasing, or licensing products or services.").

The ordinary meanings of these terms help us understand the conduct to which U.S.S.G. § 2D1.1(b)(13)(A) applies. A person "knowingly misrepresents" fentanyl as another substance when he, being aware that the substance he distributes contains fentanyl, asserts or communicates to the person to whom he distributes that it does not. If the distributor is unaware that the substance contains fentanyl, then he has not acted knowingly. And without a false or misleading assertion—through written or spoken words—about the contents of the substance, there can be no misrepresentation. A person "knowingly markets" fentanyl as another substance when he sells or advertises it as something else despite his awareness that the substance contains fentanyl.

We now consider whether the district court properly applied U.S.S.G. § 2D1.1(b)(13) to Matthews's and Livingston's conduct.

## A.

We begin with Matthews. The district court did not err in finding that Matthews knowingly misrepresented the contents of the pills he distributed. He served as the source of supply for the fentanyl pills in the drug-trafficking scheme. The pills he supplied were pressed to look like oxycodone pills. But Matthews knew they were fentanyl pills. At sentencing, the

government offered a statement from a cooperating witness that "Matthews always represented the fentanyl pills that he was selling to [the cooperator] as Percocet 30 milligram pills." R. 193, PageID 924. Matthews never told the cooperator that the pills contained fentanyl.

This evidence shows that Matthews "knowingly misrepresented" fentanyl as another substance within the meaning of U.S.S.G. § 2D1.1(b)(13). He knew the pills he distributed contained fentanyl, but he represented to a buyer that they contained a different controlled substance.

Matthews responds that the district court should not have relied on the cooperator's statement in determining whether the enhancement applied because the statement was unreliable hearsay evidence. But Matthews did not object to the admission of the statement before the district court. So we review whether the district court properly admitted the statement for plain error.

The Federal Rules of Evidence do not apply at sentencing hearings. Fed. R. Evid. 1101(d)(3). District courts can thus rely on hearsay evidence "so long as the information has *some* evidentiary basis to satisfy a minimal indicium of reliability." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (citation modified). The indicia-of-reliability standard creates a "relatively low hurdle" for admissibility, allowing "courts to consider any information that may be reliable." *Id.* (citation modified). This hurdle becomes even lower when the defendant fails to object to the statement's admissibility. Moreover, only when a district court relies on "hearsay from an unidentified informant" must there be "sufficient corroboration by other means." *Id.* (citation modified).

The district court did not plainly err by relying on the cooperator's statement. Matthews distributed fentanyl pills to the person making the statement. The cooperator's recollection of what Matthews told him about the pills has some indicia of reliability.

Matthews complains that the cooperator's statement was uncorroborated and cryptic. But because the government disclosed the cooperator's identity to the district court, this does not involve an unidentified informant. So the government did not need to corroborate the cooperator's statement. *See id.* Moreover, nothing about the statement seems cryptic.

Because the district court correctly found that Matthews "knowingly misrepresented" fentanyl as another substance within the meaning of § 2D1.1(b)(13), we need not consider whether he "knowingly marketed" it as something else.

**B.**

We next consider Livingston. The district court did not err in finding that Livingston knowingly marketed the pills he sold as something other than fentanyl pills. Matthews supplied Livingston with fentanyl pills that "were marked to look just like Oxycodone 30s. They were small, blue, and contained the marking of a pharmaceutical grade Oxycodone 30 pill." R. 219, PageID 1084. Livingston then sold "substantial" distribution quantities of those pills. *Id.* at 1090. For example, on three separate occasions over an eight-day period, he sold 50 pills, 100 pills, and 1,000 pills, respectively. Livingston, through his counsel, admitted that he knew that the pills he sold contained fentanyl and that the pills looked identical to oxycodone pills.

Livingston's conduct thus shows that he "knowingly marketed" fentanyl as another substance within the meaning of U.S.S.G. § 2D1.1(b)(13). Livingston admitted that he had a culpable mental state—he knew that the pills contained fentanyl. And the evidence reveals that Livingston marketed, or sold, the pills as something else because the pills were designed to resemble oxycodone pills. Furthermore, under the circumstances of this case, it did not matter that the initial purchaser of Livingston's pills may have been aware that the pills contained fentanyl. As the district court found, the sheer number of pills being trafficked meant that Livingston knew the buyer was "going to turn around and sell those pills to someone else. Those downstream buyers," who would not know the pills contained fentanyl, "are the folks at great risk." R. 219, PageID 1085; *see also* U.S.S.G. Supp. to App. C, amend. 807 (2018) (explaining that the risk to potential buyers who would be unaware they were buying pills with fentanyl was a key reason behind the Commission's adoption of the marketing enhancement).

The Eighth Circuit has reached a similar conclusion on similar facts. In *United States v. Wiley*, that court concluded that a defendant "knowingly marketed" fentanyl as another substance when he advertised pills as Percocet pills despite knowing they contained fentanyl. 122 F.4th 725, 731 (8th Cir. 2024); *see also United States v. Radovic*, 2025 WL 2622369, at *6

(6th Cir. Sept. 11, 2025) (upholding the district court's application of the § 2D1.1(b)(13) enhancement where the defendant sold pills made to look like Percocet pills that contained fentanyl).

Livingston argues that the district court erred in finding that he knew the pills he sold contained fentanyl.  But he conceded as much during sentencing, so he either waived this argument or invited the alleged error.  "Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation modified).  We do not review waived arguments.  *United States v. Montgomery*, 998 F.3d 693, 697–98 (6th Cir. 2021).  Under the invited-error doctrine, "a party may not complain on appeal of errors that he himself invited or provoked the district court to commit." *United States v. Wells*, 519 U.S. 482, 487–88 (1997) (citation modified).  "We sometimes—albeit rarely—review invited errors to prevent manifest injustice." *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023) (citation modified).  When we do review them, we do so for plain error. *Id.*

Assuming Livingston invited the error about whether he knew the pills he sold contained fentanyl, his argument fails under plain-error review.  Livingston's presentence report indicates that he knew the substantial quantities of pills he sold contained fentanyl.  Livingston did not object to that part of the presentence report, and the district court adopted the report as part of its factual findings.  So even without his attorney's concession at sentencing, the district court had a basis for its conclusion about Livingston's knowledge of the pills' contents.

## IV.

We turn now to Livingston's remaining challenges to his sentence.

## A.

Livingston argues that we should vacate his sentence because his trial counsel violated his Sixth Amendment right to counsel by conceding that Livingston knew that the pills he sold contained fentanyl.  We note, however, that Livingston brings this claim on direct appeal.

"We typically decline to address claims of ineffective assistance on direct appeal and instead require defendants to file a postconviction motion to vacate their sentence pursuant to

28 U.S.C. § 2255." *United States v. Hynes*, 467 F.3d 951, 969 (6th Cir. 2006). Section 2255 proceedings serve as the best forum for these claims because "the record regarding counsel's performance can be developed in more detail." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006). We have adopted a "general rule" that a defendant "may not raise ineffective assistance of counsel claims for the first time on direct appeal." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quotation omitted). Still, we recognize a "narrow exception to this rule when the existing record is adequate to assess properly the merits of the claim." *Hynes*, 467 F.3d at 969 (citation modified).

That narrow exception does not apply. We lack information about why Livingston's counsel conceded that Livingston knew the pills he sold contained fentanyl. And we cannot "ascertain whether the alleged error was prejudicial" without further factual development. *Massaro v. United States*, 538 U.S. 500, 505 (2003). Because the record is not adequately developed, we decline to address Livingston's claim of ineffective assistance.

**B.**

Next, Livingston argues that the district court erred by denying his motion for a downward departure under U.S.S.G. § 5K2.13. This provision allows a district court to grant a downward departure if "the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13.

Livingston's argument lacks merit. "A district court's decision to deny a downward departure is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008) (citation modified). The district court acknowledged Livingston's mental-capacity and mental-health challenges and understood that it could impose a sentence below the advisory Guidelines range—it simply chose not to do so. We therefore cannot review the denial of a downward departure.

To the extent Livingston's argument could be viewed as contesting the substantive reasonableness of his sentence, it still fails. The district court imposed a within-Guidelines

sentence. We presume that Guidelines-range sentences are reasonable. *United States v. Muchow*, 924 F.3d 272, 275 (6th Cir. 2019). Livingston has not rebutted that presumption.

**C.**

Last, we turn to Livingston's argument that the district court erred by imposing a special condition of supervised release which subjects his electronic devices to a random search. Because Livingston failed to object to this special condition before the district court, plain-error review applies. Livingston's argument fails because we can find no error.

"A district court must state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012) (citation modified). "A district court's consideration of the § 3553(a) factors sufficient to justify a term of incarceration as procedurally reasonable can also demonstrate that the imposition of special conditions is procedurally reasonable." *Id.* (citation modified).

At sentencing, the district court expressed a strong concern for protecting the public from those who traffic fentanyl-laced drugs. As such, "only a slight inference is required to conclude" that the imposition of this special condition was to ensure Livingston's adherence to the law while on supervised release. *Id.* We cannot conclude that the district court plainly erred in finding that his offense warranted a random search of his electronic devices.

**V.**

For the reasons above, we **AFFIRM** the district court's judgments.