# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 19, 2023       Decided April 16, 2024

No. 22-3024

UNITED STATES OF AMERICA,
APPELLEE

v.

DEANGELO EVANS, ALSO KNOWN AS DEANGELO EVENS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00328-1)

*Stuart A. Berman*, appointed by the court, argued the cause and filed the briefs for appellant.

*Chimnomnso N. Kalu*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: MILLETT and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*:

## I.   Introduction

Deangelo Evans was a passenger in a car pulled over by United States Park Police officers after they observed several traffic violations.  During the traffic stop, a protective pat-down search of Evans revealed a firearm in his waistband.  Evans was arrested and subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

At trial, Evans moved to suppress physical evidence, namely the firearm, and related statements he had allegedly made during his arrest.  The district court denied Evans's motion, holding the protective pat-down search was justified.  Evans was convicted following a stipulated trial that preserved his right to appeal the district court's denial of his motion to suppress.

Evans has now exercised that right.  Because the district court did not commit any error of law or clear error of fact in ruling on the motion to suppress, we affirm the judgment of the district court.

## II.   Background

On September 24, 2019, Park Police Officers David Payne and Lawrence Sinacore were on patrol in an unmarked car in the District of Columbia.  While in a residential neighborhood with a posted speed limit of 25 miles per hour, the officers observed a car drive past them at a high rate of speed.  The officers followed the car and saw it run two stop signs, after which they turned on their flashing lights and pulled the car over.

Officer Payne approached the driver, Aniya Derrington, and asked her for her driver's license. When she said that she did not have one, Officer Payne asked her to step out of the car and to allow him to search the car, which she did. Meanwhile, Officer Sinacore asked the passenger, Deangelo Evans, to get out of the car. Officer Payne testified that Evans stepped out with a "strange motion," by turning his back to Officer Sinacore instead of facing him. Officer Sinacore testified that Evans "instantly put his waistband area towards the actual vehicle, so you would only see his back."

After Evans stepped out of the car, Officer Sinacore asked for his consent to do a pat-down search, which Evans refused. One of the officers then asked Evans to step to the sidewalk. Around this time the officers noticed that Evans, who was wearing tight black jeans and a black shirt, had a bulge in his waistband and a "large bulge going down his pant leg." Soon after moving to the sidewalk, Evans asked to sit down, which the officers permitted as long as Evans kept his hands away from his waistband.

Shortly thereafter, Officer Payne called for backup. Meanwhile, Officer Sinacore conducted a cursory search of the vehicle, but testified that he was "uncomfortable" doing so because he "believed [he] had [his] back turned to an armed man." A minute or so later, when additional Park Police officers arrived on the scene, Officer Payne told them he believed Evans probably had a gun. Officers Sinacore and Payne then asked Evans to stand up, restrained him, conducted a pat-down search, and discovered the firearm in his waistband. After a struggle, the officers handcuffed Evans and recovered a handgun with a 30-round extended magazine. They arrested Evans, and a grand jury subsequently returned a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

At trial, Evans moved to suppress the physical evidence (the firearm) and related statements, arguing they were the product of an unlawful stop, search, and arrest. Although Evans acknowledged that, under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may temporarily detain a person in an investigatory stop, he argued that the officers who searched and arrested him lacked reasonable, articulable suspicion that he was armed or dangerous. Evans claims the traffic stop and the subsequent pat-down search were pretextual. He conceded that, had the officers noticed a bulge that appeared to be a firearm, the officers would have had sufficient justification to conduct a protective pat-down. He maintained, however, that the officers did not actually see a bulge and that their conduct was not consistent with their claim of having seen one. In support, Evans flagged several unusual details about the stop and some discrepancies in the officers' testimony.

The district court denied the motion to suppress. The court concluded, "In light of all of that testimony, and all of the evidence . . . the Government['] s [e]xhibits, and some of the defense exhibits . . . the protective pat down for weapons was fully justified by the bulge in the defendant's pants." The court found the officers' testimony credible, noting that the fitted clothing Evans wore, Evans's slim build, and the size of the gun and magazine were consistent with the officers' testimony, notwithstanding the idiosyncrasies Evans had highlighted.

After Evans's motion to suppress was denied, he agreed to a stipulated bench trial while reserving his right to appeal the denial of his motion to suppress. Evans was then found guilty of violating 18 U.S.C. § 922(g)(1), and now appeals.

### III.    Standard of Review

Evans argues again on appeal that the firearm and his related statements should have been suppressed as the product of a search and seizure made in violation of the Fourth Amendment to the Constitution of the United States.  We review the district court's findings of fact only for clear error. *United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006).

### IV.    Analysis

Because Evans has conceded the officers would have had sufficient justification to conduct a protective pat-down had they in fact seen a bulge in his pants, the sole issue on appeal is whether the district court clearly erred when it credited the police officers' testimony that they initiated a *Terry* frisk only after they saw a bulge in Mr. Evans's pants that they believed might be a gun.  *See Terry*, 392 U.S. at 30 ("where a police officer observes unusual conduct which leads him reasonably to conclude . . . the persons with whom he is dealing may be armed and presently dangerous, . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him").

Credibility determinations "are entitled to the greatest deference from this court on appeal."  *Broadie*, 452 F.3d at 880; *see also United States v. Anderson*, 881 F.2d 1128, 1142 (D.C. Cir. 1989) ("credibility determinations . . . are not for us to second guess").  To attempt to overcome this high bar, Evans argues that, owing to numerous inconsistencies, the officers' testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

Evans notes, among other details, Officer Sinacore's decision to turn his back to Evans while searching the car; the decision to let Evans sit on the sidewalk rather than pat him down immediately upon noticing the bulge; inconsistencies between the two officers' descriptions of the nature of Evans's movement when he was stepping out of the car; the officers' failure to note anything about vehicle speed in their initial report; and the inconsistency between Officer Payne's testimony before the grand jury and in the suppression hearing regarding when the officers called for backup.

Although "we reverse when a district court credits *exceedingly improbable testimony*," the inconsistencies Evans identifies do not meet that standard. *United States v. Tucker*, 12 F.4th 804, 813 (2021). Here, the officers' testimony is consistent with the undisputed size and position of the gun and its 30-round magazine, as well as the photographic evidence depicting Evans's attire and the gun as the officers found it in Evan's waistband. The inconsistencies that Evans identifies, as in *Broadie*, "may have been the result of faulty memories" or a "lack of precision in the police reports," but the "inconsistencies were not so glaring that the police officers' testimony must be a fabrication." 452 F.3d at 880 (cleaned up). Therefore, the district court's decision to credit the officers' testimony, though not inevitable, is not clearly erroneous.

## V.    Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed*.