# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 15, 2025                    Decided May 29, 2026

No. 24-3007

UNITED STATES OF AMERICA,
APPELLEE

v.

RAUL FLORES-HERNANDEZ, ALSO KNOWN AS EL TIO,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00051-1)

———

*Robert Allen Feitel* argued the cause for appellant. With him on the briefs was *Sandi S. Rhee*.

*Thomas E. Booth*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Melanie Alsworth*, Attorney. *Jonathan R. Hornok*, Attorney, entered an appearance.

Before: MILLETT, WALKER, and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Raul Flores-Hernandez pleaded guilty to engaging in a drug-trafficking conspiracy. He appealed his sentence. We affirm.

## I. Background

Raul Flores-Hernandez is a 73-year-old Mexican national known as "El Tio." JA 18. For decades, he trafficked drugs from South America, through Mexico, to the United States. He was arrested in 2017 and pleaded guilty in 2023 to conspiring to "distribute" five kilograms or more of cocaine, intending for it to "be unlawfully imported into the United States." *See* 21 U.S.C. §§ 959(a), 960(b)(1)(B), 960(b)(1)(H), 963; *see also* 18 U.S.C. § 2.

Flores submitted a "Statement of Facts" before his plea hearing. JA 30. In it, he said he was responsible for as much as 450 kilograms of cocaine involved in the conspiracy. *Id.* Later, at his plea hearing, Flores confirmed the Statement of Facts. JA 178–79.

The district court held a three-day sentencing hearing. Several witnesses testified. They included Mario Pinedo Alvarez Correa and Jack Sinuhe Almaguer-Ramirez.

Pinedo trafficked cocaine with Flores and later became a source of intelligence for the FBI. He testified that he saw "[a]bout 20 people" working for Flores. JA 408. They included approximately five "bodyguards" who "protected him." *Id.*

Among the other "people that worked for" Flores, according to Pinedo, were Chani, Cachoro, and Licenciado. JA 403–04. Pinedo did not elaborate on Chani and Cachoro, but he said Licenciado "was in charge of" work "at the ports,"

including "all of the loads" of cocaine that "would arrive and be delivered." JA 405. Working "on behalf of" Flores, Licenciado "would pay everybody at the ports" and "everyone" in "government" who required payment. JA 405–06.

In addition, Pinedo testified that a man named Enriquito "deliver[ed] . . . money" more than "ten times" to Pinedo "on behalf of" Flores. JA 418–19. It totaled "[a]bout 20 million" dollars. JA 419. Each time, Pinedo took the money "to a contact in Colombia." JA 418–19.

As for Sinuhe, he too helped Flores traffic cocaine before becoming a U.S. government informant. For example, Sinuhe once helped count and load around $14 million dollars onto a pickup truck. JA 706–09. It was Flores' "profit" from "selling cocaine." JA 709–10.

On that occasion, a man named "Chicklin was going to pick up the truck and deliver it to Mr. Flores." JA 709. Chicklin was one of Flores' "workers." *Id.* He did "[a] little bit of everything" for Flores. JA 711.

Sinuhe also testified about a man named Alfaro. Though trained as "an attorney," Alfaro worked as "an errand boy" for Flores, fetching things like "food, beverage[s]," and "cigars." JA 695–96. Alfaro "was trying to make it through" the "Flores organization" by "winning more important positions" over time. JA 696–97.

Over Flores' objection, the court used the preponderance-of-the-evidence standard to make findings of fact for sentencing. It found that Flores was responsible for 450 kilograms or more of cocaine. It also found that "there were at least five people involved in the defendant's

organization; and the defendant was, in fact, the organizer or leader. He was kind of the top-level person." JA 242.

Based in part on those findings, the court calculated a Sentencing Guidelines range from 21 years and 10 months to 27 years and 3 months. That calculation began with a base offense level of 38, which applies when the defendant in a drug conspiracy is responsible for "450 KG or more of Cocaine." U.S.S.G. § 2D1.1(c)(1). The calculation also included a four-level enhancement per Sentencing Guideline § 3B1.1(a), which applies when "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

Flores argued for a zero-point-offender reduction. That two-level reduction is available to certain defendants with zero criminal-history points. U.S.S.G. § 4C1.1. But to qualify for the reduction, Flores needed to show (among other things) that he "did not receive an adjustment under § 3B1.1 (Aggravating Role) and . . . was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." U.S.S.G. § 4C1.1(a)(10) (U.S. Sent'g Comm'n 2023). Because Flores had received an adjustment under § 3B1.1 for his role as "an organizer or leader" of extensive criminal activity, the court found that Flores was ineligible for the reduction. U.S.S.G. § 3B1.1(a).

The court sentenced Flores to 21 years and 10 months in prison and 5 years of supervised release.

He appealed.

## II. Standard of Review

"We review purely legal questions de novo and factual findings for clear error, and we give due deference to the district court's application of the Guidelines to facts." *United States v. Jones*, 744 F.3d 1362, 1366 (D.C. Cir. 2014) (cleaned up). We defer to a district court's credibility determinations unless the court credited "exceedingly improbable" testimony. *United States v. Evans*, 98 F.4th 335, 338 (D.C. Cir. 2024) (cleaned up).

## III. Analysis

Flores argues that the district court erred when it (A) used a preponderance-of-the-evidence standard to find facts at sentencing, (B) found that Flores was the organizer or leader of extensive criminal activity, and (C) determined that Flores was ineligible for a zero-point-offender reduction.[1]

The district court did not err.

## A. Preponderance Standard

Flores argues on appeal that a district court at sentencing can find facts only when they are proven beyond a reasonable doubt. Like previous panels, we find "no support for this proposition." *United States v. Bras*, 483 F.3d 103, 107 (D.C. Cir. 2007). "At sentencing, the district court may make findings of fact under a preponderance-of-the-evidence

---

[1] In his opening brief, Flores also challenged his base offense level of 38. But Flores conceded at oral argument that the range required for a base offense level of 38 "was within the range that he agreed to in his statement of facts." Oral Arg. Tr. 20–21; *see also id.* at 21 ("I did not make much in my rebuttal brief nor here . . . about quantity.").

standard . . . ." *United States v. Ventura*, 650 F.3d 746, 749 (D.C. Cir. 2011).

## B. Aggravating Role

Sentencing Guideline § 3B1.1 is entitled "Aggravating Role." It instructs a district court to increase the offense level by 4 "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

That sentencing enhancement has three elements. First, the court must find that the defendant was "an organizer or leader of a criminal activity," *id.,* which requires the "exercise" of "some control over others," *United States v. Quigley*, 373 F.3d 133, 139 (D.C. Cir. 2004) (cleaned up). Second, the court must find that at least one of the people controlled by the defendant was a "participant" within the meaning of Sentencing Guideline § 3B1.1 — i.e., someone who was criminally responsible for an offense. *See United States v. Vega*, 826 F.3d 514, 539 (D.C. Cir. 2016). Third, the court must find that the defendant's criminal activity "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

Flores challenges the district court's findings that he exercised control over others and that his criminal activity involved at least five participants. We are not persuaded. Applying the "due deference" and "clear error" standards, we affirm the district court's application of the Sentencing Guidelines to the facts that it found. *United States v. Jones*, 744 F.3d 1362, 1366 (D.C. Cir. 2014).

### 1. Control Over Others

The testimony of Mario Pinedo Alvarez Correa was by itself enough to support a finding that Flores "exercise[d] some control over others." *Quigley*, 373 F.3d at 139 (cleaned up). Pinedo saw "[a]bout 20 people" working for Flores, including approximately five "bodyguards." JA 408. He identified Chani and Cachoro as "people that worked for" Flores, as well as Licenciado, who "would pay" government officials and "everybody at the ports." JA 408, 405. He also identified Enriquito, who "deliver[ed] . . . money" more than "ten times" to Pinedo "on behalf of" Flores. JA 419.

The testimony of Jack Sinuhe Almaguer-Ramirez was also enough, by itself, to support a finding that Flores "exercise[d] some control over others." *Quigley*, 373 F.3d at 139 (cleaned up). Sinuhe identified Chicklin as one of Flores' "workers." JA 245. He said Chicklin did "[a] little bit of everything" for Flores, like transporting millions of dollars in "profit" from "selling cocaine." JA 709–11. In addition, Sinuhe identified Alfaro as "an errand boy" for Flores trying to "win[] more important positions" in the "Flores organization." JA 695–97.

The district court found Pinedo and Sinuhe "to be credible," JA 214, and we defer to that finding because their testimony was not "exceedingly improbable," *United States v. Evans*, 98 F.4th 335, 338 (D.C. Cir. 2024) (cleaned up). Pinedo and Sinuhe "largely owned up to" their "very extensive criminal conduct . . . in narcotics cocaine trafficking on an extraordinary scale," even "at great personal risk to themselves and their families." JA 214. And "[n]owhere in the record is there any suggestion that any of these cooperating witnesses was lying about knowing this defendant who is critical of their credibility but never denies knowing who each of them" is. JA 214–15.

## 2. Five or More Participants

We also defer to the district court's credibility finding when considering Pinedo's testimony that he saw "[a]bout 20 people" working in Flores' drug trafficking organization, including about five bodyguards.  JA 408.  That testimony was enough to support a finding that Flores' "criminal activity . . . involved five or more participants."   U.S.S.G. § 3B1.1(a).

## C. Zero-Point-Offender Reduction

A Sentencing Guidelines range depends on the defendant's offense level and his criminal-history score.   A defendant with no prior convictions has a criminal-history score of zero. Sentencing Guideline § 4C1.1 reduces the offense level for certain defendants with zero criminal-history points.   For that reason, it is called a zero-point-offender reduction.

At the time of Flores' sentencing,[2] a defendant was eligible for the zero-point-offender reduction only "[i]f the defendant me[t] all of the following criteria":

   (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

---

[2] After Flores' sentencing, the Sentencing Commission divided § 4C1.1(a)(10) into two sections.  U.S.S.G. Amend. 831.   The Commission explained that "stakeholders ha[d] questioned whether either condition in subsection (a)(10) is disqualifying or whether only the combination of both conditions is disqualifying."  U.S.S.G. Supplement to App. C, Amend. 831 (Nov. 1, 2024).   The Commission accordingly amended the Guidelines just "[t]o clarify the Commission's intention that a defendant is ineligible for the adjustment if the defendant meets *either* of the disqualifying conditions in the provision."  *Id.* (emphasis added)

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) **the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not**

**engaged in a continuing criminal enterprise,
as defined in 21 U.S.C. § 848**.

U.S.S.G. § 4C1.1(a) (emphasis added).

Flores argues that he meets those ten conditions if he satisfies the first nine conditions and **either** did not receive an aggravating-role adjustment **or** was not engaged in a continuing criminal enterprise. But to satisfy the tenth condition, Flores needed not to have received an aggravating-role adjustment "**and**" not to have engaged in a continuing criminal enterprise. Since Flores received an aggravating-role adjustment, he does not qualify for the reduction regardless of whether he engaged in a continuing criminal enterprise.[3]

The Supreme Court rejected an argument similar to Flores' in *Pulsifer v. United States*, 601 U.S. 124 (2024). There, the statute's conditions required (among other things) that "the defendant does not have — (A) more than 4 criminal history points, . . . (B) a prior 3-point offense, . . . and (C) a prior 2-point violent offense . . . ." 18 U.S.C. § 3553(f)(1); 601 U.S.

---

[3] That holding aligns with the holding of every other circuit to consider this question. *See United States v. Robertson*, 162 F.4th 209, 230–33 (1st Cir. 2025); *United States v. Milchin*, 128 F.4th 199, 201–03 (3d Cir. 2025); *United States v. Shaw*, No. 24-6638, 2024 WL 4824237, at *1 (4th Cir. Nov. 19, 2024) (per curiam); *United States v. Morales*, 122 F.4th 590, 593–97 (5th Cir. 2024); *United States v. Ashrafkhan*, 129 F.4th 980, 983–88 (6th Cir. 2025); *United States v. Cervantes*, 109 F.4th 944, 946–47 (7th Cir. 2024); *United States v. de la Cruz*, 135 F.4th 1127, 1129 (8th Cir. 2025) (per curiam); *United States v. Gonzalez-Loera*, 135 F.4th 856, 859–60 (9th Cir. 2025); *United States v. Herrera*, No. 24-6236, 2025 WL 1005962, at *1–2 (10th Cir. Apr. 1, 2025); *United States v. Alvarez*, No. 24-13391, 2025 WL 1450840, at *2 (11th Cir. May 14, 2025) (per curiam).

at 128–29. Pulsifer argued that a defendant meets the conditions if he "does not have" A *or* "does not have" B *or* "does not have" C. But the Supreme Court held that a defendant meets the conditions only if he "does not have" A *and* "does not have" B *and* "does not have" C. 601 U.S. at 149–53.

*Pulsifer* addressed a difficult interpretive question that divided federal circuits and the Supreme Court. That question was harder than the question in this case because there was only *one* verb phrase in *Pulsifer*. The defendant satisfied that statute's condition when the defendant:

**does not have** [A], [B], and [C].

18 U.S.C. § 3553(f)(1).

But unlike in *Pulsifer*, the text in our case *repeats* the verb phrases conjoined by "and" — a defendant satisfies the condition when the defendant:

**did not receive** [A] . . . and **was not engaged** in [B].

U.S.S.G. § 4C1.1(a)(10). So "this is not a provision stating 'You must not drink and drive,' but a provision stating 'You must not drink *and* must not drive.'" *Morales*, 122 F.4th at 594.[4]

---

[4] *See also Ashrafkhan*, 129 F.4th at 985 (U.S.S.G. § 4C1.1(a)(10) "avoids the grammatical structure that created interpretive challenges in *Pulsifer*" because "[e]ach negative phrase constitutes a separate requirement." (cleaned up)).

## IV. Conclusion

The district court correctly used the preponderance standard to find facts at sentencing. It did not clearly err when it found that Flores was a leader or organizer of extensive criminal activity. Nor did it err in finding Flores ineligible for a zero-point-offender reduction.

We therefore affirm the judgment of the district court.

*So ordered.*